UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GERBER SCIENTIFIC
INTERNATIONAL, INC.,

    Plaintiff,

    v.

ROLAND DGA CORPORATION and
ROLAND DG CORPORATION,

    Defendants.

3:06-cv-2024 (CFD)

## RULING ON MOTION FOR SANCTIONS AND MOTION TO COMPEL

This is a patent infringement case between plaintiff Gerber Scientific International, Inc. ("Gerber") and defendants Roland DG and Roland DGA ("Roland"). In these motions, Gerber requests various forms of relief from the Court. Gerber requests sanctions in the form of an order striking the deposition transcript of Stephen Hastings and precluding him from testifying, an admonition to defense counsel Jonathan Steinsapir for his conduct during Hastings' deposition, and an award to Gerber reimbursing it for the costs and fees associated with Hastings' deposition and the filing of this motion. Also, Gerber moves to compel Roland to produce documents that were not produced during Hastings' deposition, and to compel Roland to produce a third party witness, David Williamson, for deposition.

**I.    Background**[1]

The facts relevant to these motions mostly involve the circumstances of Hastings'

---

[1] Unless otherwise noted, these facts are taken from the parties' memoranda, exhibits, affidavits, and deposition transcripts concerning the pending motion. They are undisputed unless otherwise noted.

deposition, but a bit more of the history of this heavily litigated case is necessary for a full understanding of the dispute.

David L. Williamson is currently the president of an Ohio company that does consulting and market research for the sign and digital printing industry. Prior to his current position, Williamson was a consultant in the sign industry beginning in 1994. In 2002, Williamson conducted a market research study for Gerber. Williamson stated that at that time he did not sign a "non-compete" agreement, or anything else that precluded him from working for Gerber's competitors in the future. He did, however, sign a non-disclosure agreement relating to the services he provided, and states that he has never violated that agreement by revealing any of the details of his consultancy for Gerber. In 2006, Williamson completed law school and was admitted to the State Bar of Ohio. On January 17, 2007, Roland DGA retained Williamson as a consulting expert in connection with this lawsuit. In that capacity, Williamson states he has done fact gathering, educated Roland's counsel on the technology at issue in this case, and helped identify potential experts in the case.

Stephen Hastings is currently the Chief Technical Officer at a laser scanning company in Munich, Germany. Before this position, he worked as an inventor and independent technical consultant. In 1991, Hastings filed an application with the British patent office based on technology quite similar to the technology at issue in this case, but the patent was never issued. In July, 2007, Williamson traveled to Germany to meet with Hastings.[2] At that meeting, Hastings shared with Williamson his file containing records of his product development and other intellectual property work. Williamson photocopied part of that file that day. Hastings

---

[2] The trip occurred after the filing of this action.

states that at that initial meeting in Germany he agreed to serve as a consultant for Roland, and understood that his communications with Hastings were to be confidential. Since 2007, Hastings has consulted with Roland's attorneys about this case. Hastings stated that he has explained relevant technology to Roland's attorneys, assisted in locating prior art, and helped the attorneys locate potential witnesses. In June 2008, Hastings learned that an investigator had been trying to contact him about his 1991 patent application, and that the investigator had contacted his ex-wife and former neighbors. He alerted Roland's attorneys, Jonathan Steinsapir and Greg Korn, about the situation. Shortly after, Roland's counsel, concerned the investigator had been hired by Gerber, sent a letter to Gerber's counsel requesting that any attempts to contact Hastings go through them.

The parties scheduled Hastings's deposition for February 2009. In the month leading up to Hastings' deposition, Roland produced to Gerber documents it had received from Hastings. Gerber calculates the documents totaled 191 pages. Roland did not produce all the documents it had from Hastings, claiming some were protected by the attorney-client privilege. Gerber claims that it is entitled to see additional documents related to Hastings' patent application and his work for Roland, and brings this motion to compel production of those documents.

In February 2009, Hastings was deposed at Roland's counsel's office in Santa Monica, California. Jeffrey Schwab, Gerber's attorney, conducted the deposition. Steinsapir identified himself as attorney "for the deponent" as well as for Roland DGA. In his declaration, Hastings stated that, "As I have never had my deposition taken before, and I am unfamiliar with American law in general, I requested as part of my consulting arrangement with Roland that Roland's counsel explain the deposition process to me and make sure that my own legal interests are the

deposition were protected." Hastings Dec. 2-3, March 31, 2009, ECF 109, Ex. 2. At points throughout the deposition, Steinsapir interjected with objections to Schwab's questions. Gerber characterizes many of these as "speaking objections," and argue they interfered with the course of the deposition. For example, Gerber cites the following statement as an example of an inappropriate objection:

> MR. STEINSAPIR: Let me just interpose an objection to the question, which is that its vague to the extent — it's ambiguous to the extent that it's unclear whether it includes direct production or subcontracting, endorse of contract.

Hastings Dep., 35:18-22, Feb. 5, 2009, ECF No. 106, Ex. 3.

Gerber also relies on the following exchange for their contention that Steinsapir's behavior warrants sanctions:

> Mr. SCHAWB: Okay. But suppose it's a much more complicated image. I'm assuming you put through one color at a time, right?
>
> MR. STEINSAPIR: Objection. Vague and ambiguous as to the meaning of "image."
>
> MR. SCHWAB: Oh, we don't know what "image" means?
>
> MR. STEINSAPIR: "Image" is a term —
>
> MR. SCHWAB: Excuse me.
>
> MR. STEINSAPIR: —used in this patent — no, I'm going to state my objection, then, because you seem to want clarification of —
>
> MR. SCHWAB: I don't want clarification.
>
> MR. STEINSAPIR: Excuse me. I am talking on the record, sir.
>
> MR. SCHWAB: Okay.
>
> MR. STEINSAPIR: "Image" is a term used in this patent in several places and in different ways. "Image" is also a term used in the '135 patent in different ways. And "image" was used during the re-examination by your firm in certain ways that was incorrect. So that's

why I'm objecting, because I am genuinely concerned.

Hastings Dep. 217:11-218:8, Feb. 5, 2009, ECF No. 106, Ex. 3.

Also, six times during the deposition, Steinsapir instructed Hastings not to answer the question posed, claiming that the question asked about information covered by the attorney-client privilege. Gerber claims Steinsapir's actions during the deposition violate Federal Rule of Civil Procedure 30, and brings this motion for sanctions.

## II. Discussion

### A. Sanctions Relating to Hastings' Deposition

The Federal Rules of Civil Procedure set forth the applicable rules for the manner in which attorneys may make objections during depositions and when they may instruct their client not to answer a question. "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). "Appropriate objections include the form of the question or the responsiveness of an answer." Landers v. Kevin Gros Offshore, L.L.C., 2009 WL 2046587, *2 (E.D. La. July 13, 2009), citing Fed. Rule Civ. P. 30(c) Advisory Committee's Note, 1993 amendments. The Rules also provide that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [terminating or limiting a deposition]." Fed. R. Civ. P. 30(c)(2). For example, "the general rule . . . is that absent a claim of privilege, it is improper for counsel at a deposition to instruct a client not to answer. . . . If counsel objects to a question, he should state his objection for the record and then allow the question to be answered." Eggleson v. Chicago Journeymen Plumbers' Local Union, 657 F.2d 890, 902 (7th Cir. 1981) (internal citations and

quotations omitted). However, "[i]f a particular question . . . opens up a whole area of questionable relevance, or other serious problems develop which counsel cannot solve themselves, then resorting to the court may be justified or necessary." Id. at 903.

Rule 30 also provides that the court "may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). District courts are afforded wide discretion in sanctioning the parties that come before them. See Novak v. Wolpoff & Abramson LLP, 536 F.3d 175, 177 (2d Cir. 2008). However, the use of severe sanctions is intended "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976) (holding that dismissal was proper where one of the parties repeatedly violated discovery orders).

Gerber seeks sanctions against Steinsapir, the attorney who made speaking objections and forbade Hastings from answering certain questions during the deposition. In prior cases, sanctions have been imposed only when counsel engaged in extreme conduct. See, e.g. Ofoedu v. St. Francis Hospital, 234 F.R.D. 26, 35 (D.Conn. 2006)(imposing $750 sanctions on attorney who ignored a previous admonition from the court and repeatedly referred to the deponent as a "farm slave"); Landers, 2009 WL 2046587 at *4 (imposing $500 sanction upon an attorney who yelled, interrupted the witness who was being examined, and would not allow that witness to complete the answers to his questions); Amari Co., Inc. v. Burgess, 2009 WL 1269704, *4-5 (N.D. Ill. April 30, 2009) (imposing costs of rescheduled deposition on attorney who, through his objections, clearly indicated to his witness how to answer the questions and at one point claimed

"I'm allowed to do whatever I want."). Such sanctionable cases are quite different than the facts here. Gerber's characterization of Steinsapir's behavior during the deposition—that he gave "lengthy soliloquies" and "*ad hominem* criticism of counsel," and that "he refused to be ignored"—is clearly unsupported by the deposition transcript and video excerpts of the deposition. In this case, Steinsapir's objections for the most part, though longer than the rules suggest, seemed to merely state the reasons for his placing the objection on the record. The colloquy about the word "image," an objection upon which Gerber focused in its memorandum, appeared to center on a dispute about the meaning of the word used in the question. In the patent infringement context, the exact meaning of such words and phrases are often the subject of dispute between the parties. Since the precise definition of a term can affect the answer to the question, it is not out of line for the attorneys to argue the precise meanings of industry terms of art.

Though the deposition transcript shows several of Steinsapir's objections were not entirely concise, any violation of Rule 30 by Steinsapir seems to fall short of the need for sanctions. In a separate case, the court found that although an attorney had "engaged in a great deal of inappropriate behavior, including interrupting questioning, instructing the witness, answering for the witness, interjecting legally improper objections, making long colloquies . . . and displaying hostile and aggressive behavior toward [the] deponent," the court refused to impose sanctions. See Order Granting in Part and Denying in Part Motion to Compel, Ofoedu v. St. Francis Hospital, No. 04-1707 (D.Conn. Oct. 7, 2005), ECF No. 37.

In addition, Steinsapir's instructions that Hastings refrain from answering several questions was based on assertions of attorney-client privilege and work product. Of the five

objections Steinsapir made on the basis of attorney-client privilege, one was related to Hastings' representation by patent attorneys in connection with his British patent application in 1991, and four were related to Hastings' representation by Roland's counsel at the deposition that day. Although Gerber raises questions about that latter representation—finding it odd that Hastings was being paid by his attorneys, and not the other way around—Hastings stated in his declaration that he requested as part of his consulting arrangement that Roland's counsel "make sure that [his] legal interests at the deposition were protected." Despite the somewhat unique situation of a consulting expert also being represented by the lawyers for whom he works, the Court finds Steinsapir's assertions of privilege were based on good faith, and Rule 30 allows for such instructions.[3] As such, the alleged violations on the part of defense counsel are not based on extreme behavior, and sanctions are not warranted. Since this court finds that sanctions are unwarranted, the striking of the deposition transcript and the exclusion of this witness's testimony at trial—consequences far harsher—would be inappropriate.

### B. Motion to Compel Documents

Gerber requests the Court order Roland to produce documents pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure. That rule allows a party to move to compel disclosure if another party fails to make a disclosure required by the Rules. The documents in question comprise the file Hastings kept of papers related to his product development work and other intellectual property matters. Hastings brought that file to his meeting with Williamson in July 2007 in Munich, and Williamson made photocopies of parts of that file on that day. Later,

---

[3] See additional discussion of attorney-client privilege relating to Hastings' patent application documents, section II.B, *infra*.

Hastings gave the originals to Roland's counsel before his deposition. Hastings Dep., 133:2-138:17, Feb. 5, 2009, ECF No. 106, Ex. 3. Roland only disclosed portions of the file to Gerber. Gerber moves to compel disclosure of the remainder of the file. Roland argues that it disclosed all non-privileged documents in the Hastings file, but that the additional documents Gerber seeks is protected by the attorney-client privilege. Roland contends the documents are correspondence between Hastings and his British patent attorneys regarding his British patent application, and are therefore privileged.[4]

The attorney client privilege applies only if:

(1) the asserted holder of the privilege is or sought to be come a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

U.S. v. United Shoe Machinery Corp., 89 F. Supp 357, 358-359 (D.Mass. 1950). The dispute between the parties focuses on element (4), whether or not Hastings waived the privilege by disclosing his file to Williamson in July 2007 at their meeting in Germany.

"The attorney-client privilege may be waived by the client . . . expressly, as when a client voluntarily turns over privileged documents." 6 James W. Moore, et. al, Moore's Federal Practice, §26.49 (5)(a) (2010). See also, Urban Box Office Network, Inc. v. Interfase Managers,

---

[4]As noted above, Hastings stated in his declaration that he asked, as part of his consultant agreement, to have Roland's counsel represent his legal interests his deposition. But this is not the representation on which the assertion of privilege is made. Instead, Roland argues the documents in question were privileged because they were communications between Hastings and his patent lawyers decades earlier.

L.P., No. 01-CV-8854, 2006 WL 1004472 at *3 (S.D.N.Y Apr. 17, 2006) ("the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclose any significant part of the communication to a third party . . ."). Gerber argues that Hastings waived any attorney-client privilege when he turned over the file to Williamson. As Gerber correctly points out, at their initial meeting in 2007, Williamson did not represent Hastings (and neither did Roland's counsel), and therefore Williamson was a third party. As such, by disclosing his documents to Williamson, Hastings waived the attorney-client privilege with respect to the documents he then turned over to Williamson.

Roland argues that Hastings did not waive the privilege by giving his file to Williamson because "Mr. Hastings' meetings with Mr. Williamson were all themselves in the context of a highly confidential consultancy regarding the defense of a legal action" and that Hastings "showed his documents to Mr. Williamson only on the express understanding that his work with Mr. Williamson was to remain confidential." Def.'s Opp. To Mot. For Sanctions and Mot. To Compel 35, 13 April 6, 2009, ECF No. 109. But Roland seems to confuse the confidentiality of attorney-client communications on which the attorney-client privilege is based, with the confidentiality that Hastings agreed to maintain as part of his consultancy for Roland. That Hastings understood his meeting with Williamson to be a confidential discussion about a potential consulting project for Roland does not change the privilege analysis. Hastings turned over his documents to a third-party who was not his lawyer, and thus the disclosure of these documents to Williamson constitutes waiver of the privilege.

To the extent Roland is arguing that it need not produce the rest of Hastings' file because he is a consulting expert, the argument is misplaced. While, in general, consulting experts are

generally immune from discovery under Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure,[5] Hastings has a dual role in this litigation as both a consulting expert for Roland and a fact witness about the history of the patent in the instant case. The information that Hastings will be able to provide as a fact witness and former patent applicant may be important to this case. Specifically, many of Roland's affirmative defenses involve Hastings' 1991 patent application.

Because the documents Gerber seeks in this motion to compel concern Hastings' patent application, and not his consultancy for Roland, they are discoverable. The commentary to Rule 24(b) notes it does not apply "to the expert whose information was not acquired in preparation for trial" and concludes that "such an expert should be treated as an ordinary witness." Fed. R. Civ. P. 26(b)(4) (Notes of the Advisory Committee on Rules, 1970 Amendment). Other courts that have confronted the problem of third parties who act as both consultants and fact witnesses have allowed parties to discover information from consulting experts that predates their work on the litigation. See, e.g., General Elec. Capital Corp. v. DirectTV, Inc., No. 97-CV-1901, 1998 WL 849389 (D.Conn. 1998); Atari Corp. v. Sega of America, 161 F.R.D. 417, 422 (N.D. Cal 1994) (holding that a nontestifying expert may testify to fact and opinions known unless obtained exclusively in anticipation of litigation). Therefore, the Court grants Gerber's motion to compel documents related to Hastings' 1991 patent application. They are not covered by the attorney-client privilege, nor the prohibition on discovery from consulting experts.

With respect to Williamson, Gerber seeks information related to his consultancy for Roland. That information falls squarely within Rule 26(b)(4)(B). However, Rule 26 recognizes

---

[5]Rule 26(b)(4)(B) says "ordinarily, a party may not . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation . . . and is not expected to be called as a witness at trial."

an exception to the general non-disclosure rule for consulting experts, permitting discovery from another party's consulting expert only "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Rule 26(b)(4)(B)(ii).  The party seeking the discovery bears the burden of showing "exceptional circumstances."  See Bank Brussel Lambert v. Chase Manhattan Bank, N.A., 175 F.R.D. 34, 44 (S.D.N.Y 1997).  Because Gerber bears the burden of showing exceptional circumstances in this case, but did not address the issue in its Memorandum and Reply Memorandum of Law in support of this motion, the Court declines at this time to order the deposition of Williamson.

### III.    Conclusion

Accordingly, Gerber's motion for sanctions [Dkt. # 106 ] is DENIED.  Gerber's motion to compel is with respect to the Hastings documents is GRANTED.  Gerber's motion to compel the deposition of Williamson is DENIED without prejudice.

SO ORDERED.  Dated this   20th   day of September, 2010, at Hartford, Connecticut.


　/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**