# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERBER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) 3:06-cv-02024-CFD ) |
| ROLAND DGA CORPORATION and ROLAND DG CORPORATION, | ) ) ) ) |
| Defendants. | ) ) |
| ROLAND DGA CORPORATION and ROLAND DG CORPORATION, | ) ) ) |
| Counterclaimants, | ) ) |
| v. | ) ) |
| GERBER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) |
| Counterclaim Defendant. | ) ) |

## ROLAND DG CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER THAT THE DEPOSITIONS OF ITS JAPANESE-RESIDENT WITNESSES TAKE PLACE IN JAPAN AND TO QUASH THE DEPOSITION NOTICE OF MASAHIRO TOMIOKA

Defendant Roland DG Corporation ("RDG"), through its attorneys of record, respectfully submits this brief in support of its Motion for Protective Order that the Depositions of Its Japanese-Resident Witnesses Take Place in Japan and to Quash the Deposition Notice of Masahiro Tomioka.

ORAL ARGUMENT REQUESTED

**I.     INTRODUCTION**

This Court, like most federal courts, follows the general rule that a witness, especially a witness for a defendant corporation, should be deposed where the witness resides. The reason for this general rule is as simple as it is fair: the plaintiff—not the defendant, and certainly not the defendants' employees—initiated the lawsuit and chose its location, so it ought to be the one to bear the costs and inconvenience of traveling for a deposition.

Plaintiff Gerber Scientific International, Inc. ("Gerber") filed this action in March 2010 against Defendant RDG for the alleged infringement of U.S. Patent No. 5,537,135 ("the '135 Patent"). RDG, a Japanese corporation, does not design or create in the United States any of the products that Gerber accuses of infringement. All of the research and development for the products at issue in this case occurred in Japan, and all of RDG's employees who are most knowledgeable about these matters are Japanese citizens and residents. Nevertheless, and despite this district's strong presumption that the depositions of a corporate defendant's witnesses occur where the witnesses reside, Gerber is demanding that the depositions of four RDG witnesses, including RDG's President, all of whom work and live in Japan, be taken in the United States.[1]

These witnesses do not visit the United States frequently, have no current plans to do so, and have demanding work schedules that do not permit them to spend at least two days traveling to and from the United States for depositions. Gerber has no legitimate reason for imposing these burdens on RDG's witnesses when its counsel can more easily and more cheaply travel to Japan to take these depositions in one trip. Gerber, which initiated this lawsuit against Roland

---

[1] The witnesses are Kei Akiyama, Takayasu Nakamura, Hajime Yoshizawa, and Masahiro Tomioka.

DGA Corporation ("DGA") in 2006 and brought in RDG years later, claims a substantial amount of damages, so it cannot seriously complain about costs; and courts simply do not consider the inconvenience of counsel as a valid reason to shift the same or greater inconveniences on a defendant corporation's employees.  The Court should thus grant RDG's motion for a protective order because the law and equities mandate that the depositions of the RDG witnesses take place in Japan.

Gerber also demands the deposition of Masahiro Tomioka, RDG's President, but has not alleged that Mr. Tomioka has any unique personal knowledge of the issues of this case or the technology behind the accused products.  Because Gerber has not provided any legitimate reason for taking Mr. Tomioka's deposition and, contrary to the law of this Court concerning depositions of high-ranking corporate officers, has failed to first exhaust other, less burdensome, modes of discovery, Gerber should be prohibited from deposing Mr. Tomioka.

## II. BACKGROUND

### A. RDG and DGA

Defendant RDG is located in Hamamatsu, Japan, and is incorporated under the laws of Japan.  DGA is a California corporation with its headquarters in Irvine, California.  Declaration of Jeremy Forest ("Forest Decl."), Ex. 1, Declaration of Bruce Lauper,[2] ¶ 3.  DGA is the exclusive distributor of RDG-manufactured products in North and South America (excluding Brazil).  *Id*. ¶ 5-6.  DGA, and DGA alone, sells the accused products throughout the U.S.  *Id*.  RDG has no relevant involvement with the accused products after DGA buys those products in

---

[2] The Declaration of Bruce Lauper (Dkt. 162-3) was filed in connection with RDG's Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction (Dkt. 162).  The Second Amended Complaint named RDG as a defendant in 2010 for the first time since this case was filed in 2006.  For the Court's convenience, a copy of the Lauper Declaration is submitted with this motion for protective order at Forest Decl., Ex. 1.

Japan and takes title to them there. *Id*. ¶ 5. DGA then handles the importation of those products into the United States from Japan. *Id*. ¶ 9. DGA, and not RDG, makes the decision as to where, and to whom, the accused products are sold in the U.S. *Id*. ¶¶ 5-6.

### B. Gerber's Notices of Deposition and the Japanese Witnesses

On February 25, 2011, Gerber noticed the depositions of Kei Akiyama, Takayasu Nakamura, Hajime Yoshizawa, and Masahiro Tomioka, to be taken at the offices of DGA's counsel in California during the week of April 25, 2011. Forest Decl., Ex. 2. The four witnesses are citizens of Japan and hold high-level executive positions in RDG. Declaration of Kei Akiyama ("Akiyama Decl."), ¶¶ 1-2; Declaration of Takayasu Nakamura ("Nakamura Decl."), ¶¶ 1-2; Declaration of Hajime Yoshizawa ("Yoshizawa Decl."), ¶¶ 1-2; Declaration of Masahiro Tomioka ("Tomioka Decl."), ¶¶ 1-2. While all of the witnesses occasionally travel to the U.S., their trips have been infrequent (usually no more than once or twice a year) and short (usually range from a few days to less than a week). Akiyama Decl., ¶ 6; Nakamura Decl., ¶ 4; Yoshizawa Decl., ¶ 4; Tomioka Decl., ¶ 8. The trips are so short, in fact, that virtually all of their waking moments in the United States are devoted to their responsibilities as officers of RDG. Akiyama Decl., ¶ 6; Nakamura Decl., ¶ 4; Yoshizawa Decl., ¶ 4; Tomioka Decl., ¶ 8.

Mr. Akiyama is an Executive Officer responsible for the development of printing technologies. Akiyama Decl., ¶ 2. Mr. Nakamura is a General Manager in the Information Technology Department, where he is responsible for information system development. Nakamura Decl., ¶ 2. Prior to September 30, 2010, Mr. Nakamura was responsible for the development of RDG product software. *Id.* Mr. Yoshizawa is a Sales and Marketing Manager, and supports business operations in countries outside of Japan, including the United States.

Yoshizawa Decl., ¶ 2. RDG does not object to the depositions of these witnesses, but only objects to Gerber's insistence that they travel to the United States.

Unlike the other noticed witnesses, however, RDG *does* object to the deposition of Mr. Tomioka (regardless of location) because Mr. Tomioka has no responsibilities specific to the United States or the accused products. Instead, Mr. Tomioka is the President of RDG and is responsible for the overall management of the company. Tomioka Decl., ¶ 2. As President of RDG, Mr. Tomioka is extremely busy and must devote long hours to performing his responsibilities. *Id.* ¶ 7. Even if his deposition were taken in Japan, preparing for and attending it will take at least two days out of Mr. Tomioka's busy schedule, which would significantly conflict with his responsibilities as RDG's President. *Id.* Unquestionably therefore, forcing Mr. Tomioka to attend a deposition in the United States would severely interfere with his presidential responsibilities. *Id.*

## III.  ARGUMENT

### A.  The Proper Location for the Depositions of any RDG Employees Is Japan, Where They Live and Work

The four deponents noticed by Gerber are Japanese citizens, they live and work in Japan, and they do not travel frequently to the U.S. Their depositions, to the extent they should take place at all,[3] should take place in Japan.

---

[3] As already noted, RDG does not object to the depositions of Messrs. Akiyama, Takayasu, and Yoshizawa, as long as they are deposed in Japan. For the reasons provided *infra*, RDG does object to any deposition of Mr. Tomioka regardless of its location. Obviously, however, if the Court disagrees with RDG on the impropriety of deposing Mr. Tomioka at all, that deposition should occur in Japan.

### 1. The General Rule That Witnesses Should Be Deposed in Their Places of Residence Should Apply Here

The general rule in this district is that depositions should take place in or near the deposed party's residence or principal place of business. *See Sheehy v. Ridge Tool Co.*, No. 3:05-cv-01614 (CFD), 2007 U.S. Dist. LEXIS 37787, at *7 (D. Conn. May 24, 2007) ("Case law suggests that the general presumption is that a non-resident corporate defendant should be deposed in its principle place of business."); *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) ("The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when . . . the corporation is the defendant." (citation omitted)); *see also Work v. Bier*, 107 F.R.D. 789, 793 (D.D.C. 1985) ("the universally accepted rule in federal litigation is that, in the absence of special circumstances (such as an impoverished plaintiff and a very affluent defendant), a party seeking discovery must go where the desired witnesses are normally located"); *Devlin v. Transp. Comm. Int'l Union*, No. 95 Civ. 0742 (JFK) (consolidated with 95 Civ. 10838 (JFK)), 2000 U.S. Dist. LEXIS 264, at *8 (S.D.N.Y. Jan. 14, 2000) ("As a general matter, there is a presumption that a defendant or non-party witness shall be deposed in the district where the deponent resides or has a principal place of business.").

The reason for this presumption was articulated by the *Work* court more than twenty-five years ago when it held that the depositions of a German defendant's employees should occur where they live:

> Plaintiffs brought this suit. The defendants are not before this court by choice, but because plaintiffs brought suit here. Plaintiffs cannot now complain if they are required to take some discovery in the Federal Republic of Germany.

*Work*, 107 F.R.D. at 793; *see also Morin*, 229 F.R.D. at 363 ("This presumption is based on the concept that *it is the plaintiff who brings the lawsuit and who exercises the first choice as to the*

6

*forum.*") (quoting *Tailift USA, Inc. v. Tailift Co.*, No. 3:03-cv-0196-M, 2004 U.S. Dist. LEXIS 28648, at *4 (N.D. Tex. Mar. 26, 2004)) (emphasis in original).

Accordingly, a plaintiff seeking to depose a corporate defendant anywhere other than its principal place of business "has the affirmative burden of demonstrating 'peculiar' circumstances which compel the court to order the depositions to be held in an alternate location." *Morin*, 229 F.R.D. at 363, citing *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 203 F.R.D. 98, 107 (S.D.N.Y. 2001); *see also Sheehy*, 2007 U.S. Dist. LEXIS 37787, at *8 ("[T]he burden should remain on the plaintiff to show why, in his particular case, the circumstances are such that a corporate defendant's deposition should take place somewhere other than its principle place of business.").

As *Six West* explained, the presumption that the depositions should be located at the deposed party's residence can be overcome only by certain factors, such as when "cost, convenience, and litigation efficiency militate in favor of holding the deposition" outside of the witnesses' home district. *Six West*, 203 F.R.D. at 107, quoting *Devlin*, 2000 U.S. Dist. LEXIS 264, at *3. The *Six West* court found that these factors favored holding depositions in Japan where the witnesses resided, and the facts of this case demand a similar holding.

          **a)**     **Cost Considerations Weigh in RDG's Favor**

In analyzing this factor, courts determine whether the parties are equally "well-equipped to bear the costs associated with [the] deposition." *Six West*, 203 F.R.D. at 107. Gerber will likely argue financial hardship by having to travel to and depose witnesses in Japan. But here, forcing four witnesses to travel from Japan to the United States is far more expensive than having a single lawyer fly from New York to Japan. Moreover, this is not a case where an individual or small, local company is suing an international behemoth. Gerber's 2010 revenues were nearly half a *billion* dollars (Forest Decl., Ex. 3, Gerber 2010 Annual Report, at 1

7

(http://www.gerberscientific.com/pdfs/annual10.pdf), slightly higher than RDG's 28.4 billion yen (approximately $343 million) (Forest Decl., Ex. 4, (http://www.rolanddg.com/ir_e/finance/highlight01.html)).  In any event, this Court has held that the presumption in favor of deposing witnesses at home was not overcome even where the plaintiff was an individual and "the defendant corporations [were] multibillion-dollar enterprises."  *Sheehy*, 2007 U.S. Dist. LEXIS 37787, at *5-7 (finding that while the corporate defendants were "likely in a better position to bear the travel costs[,] . . . to require the defendant representatives to come to Connecticut to be deposed would be to turn the general presumption on its head.").

Moreover, like the plaintiff in *Six West*, 203 F.R.D. at 107, Gerber "is no stranger to the legal system and has already shown the financial wherewithal to go the distance" by adding RDG as a party to this litigation.  Further, in just over four years, Gerber has brought at least three separate patent infringement suits against *six* different parties.  *See* Forest Decl., Ex. 5.  Thus, Gerber cannot argue that financial considerations favor bringing four Japanese-resident witnesses to the U.S.

          **b)**      **Convenience Considerations Weigh in RDG's Favor**

                  **(1)**     **Travel to the U.S. would impose hardship on the Japanese-resident witnesses and RDG**

"Factors relevant to convenience include . . . the extent to which the witness' affairs might be disrupted."  *Devlin*, 2000 U.S. Dist. LEXIS 264, at *11.  Courts pay particular attention to the impact of a witness's extended travel on the company's operations.  *See Morin*, 229 F.R.D. at 363 ("[T]ravel to Connecticut to be deposed would result in disrupting [the witness's] department, causing significant burdens and hardship to not only [him]self, but [his] staff as well." (quoting affidavit)).

8

The Japanese witnesses noticed by Gerber are high-level employees of RDG responsible for, amongst other things, ongoing product development, project management, and employee supervision. Akiyama Decl., ¶ 5; Nakamura Decl., ¶ 2; Yoshizawa Decl., ¶ 2; Tomioka Decl., ¶ 2. A direct flight from Tokyo to Los Angeles takes about 10 hours and the return takes about 12. Additionally, travel between Hamamatsu and either of the two closest international airports (Tokyo's Narita airport and Osaka's Kansai airport) takes about 4-5 hours each way. Thus, the RDG witnesses would spend at least a day traveling to the deposition and at least a day returning from it. Moreover, the time difference between Japan and California is 16 hours (i.e., 9:00 am on Monday morning in Los Angeles is 1:00 am Tuesday morning), so each witness will also experience jet lag, which would require additional time to become acclimated to the local time so he can give his best testimony. As such, attending their depositions in California would require the witnesses to spend several more days away from their work in Japan than they would need to if their depositions were in Japan. *Id.*; *Six West,* 203 F.R.D. at 108 (ordering the deposition of two Japanese residents to be conducted in Japan because the witnesses "[have] busy schedules [that] would obviously be disrupted by a trip to the United States" and "[t]heir absence from work would also adversely affect the defendant's [business] affairs").

### (2) The witnesses' infrequent travel to the U.S. is limited to business-related activities

Courts sometimes consider "[w]hether the persons sought to be deposed often engage in travel for business purposes." *Tailift*, 2004 U.S. Dist. LEXIS 28648, at *10. Nevertheless, the fact that a witness "regularly travels to [the forum] on business and could be deposed during one such trip" carries little weight when "such an arrangement would mitigate the burden only slightly" and the facts show that the witness has a busy work schedule when he travels to the United States. *Six West*, 203 F.R.D. at 108.

9

Like the Japanese executives in *Six West*, each of the RDG witnesses' trips to the U.S. is strictly limited to corporate business matters. Moreover, their trips generally are infrequent (about once a year), short in duration (usually less than a week), and tightly scheduled with business meetings and other executive duties. Akiyama Decl., ¶ 6; Nakamura Decl., ¶ 4; Yoshizawa Decl., ¶ 4; Tomioka Decl., ¶ 8. Under similar circumstances, the court in *Tailift* found that the Taiwanese witness's seven trips to the U.S. over the course of six years, "and only for a few days each time, hardly presents a frequency of presence in the United States that weighs in favor of overcoming the presumption." *Tailift*, 2004 U.S. Dist. LEXIS 28648, at *10. Accordingly, forcing the four Japanese witnesses to travel to the U.S. simply to sit for depositions would be wholly inappropriate and unduly burdensome.

> **(3)** **Any inconvenience to Gerber's counsel should be discounted greatly in comparison to the witnesses'**

Courts are unsympathetic to counsel's claims of inconvenience where travel is concerned. *Morin*, 229 F.R.D. at 363 ("[T]ravel for depositions is expected of litigators."); *Devlin*, 2000 U.S. Dist. LEXIS 264, at *11 ("[T]he convenience of counsel is less compelling than any hardship to the witnesses."); *see also Six West*, 203 F.R.D. at 108. This is especially true for plaintiff's counsel, who is normally expected to conduct discovery at great distances from the forum. *See Morin*, 229 F.R.D. at 363 ("[I]t is the plaintiff who is generally required to 'bear any reasonable burdens of inconvenience that the action represents.'" (quoting *FDIC v. La Antillana, S.A.*, No. 88 Civ. 2670 (JFK), 1990 U.S. Dist. LEXIS 13246, at *4 (S.D.N.Y Oct. 5 1990).

Gerber has never provided any reasonable explanation as to why having its counsel travel to Japan for depositions would represent a greater inconvenience when compared to the burden that would be forced on the four RDG employees (so far) it seeks to depose if required to travel to the United States. Thus, the convenience factor clearly tips in favor of the witness-designees.

*See Six West*, 203 F.R.D. at 108 (finding that plaintiff's "seasoned litigators . . . have substantial resources and experience to accomplish" depositions in Japan).

### c) Litigation Efficiency Considerations Are Neutral

The last factor courts consider is whether litigation efficiency is better served by having the depositions occur where the witnesses reside. *Six West*, 203 F.R.D. at 108. In *Six West*, the court observed that one important aspect of litigation efficiency was where the relevant documents are located. *Id.* In *Six West*, the documents were located in New York, weighing in favor of depositions there. *Id.* Although the court also recognized that "judicial supervision of overseas depositions by telephone may be difficult," it noted that "[w]hile parties in this case have had their share of disagreements, these disputes have not been characterized by any unusual degree of acrimony," so "there is little indication that such supervision is going to be necessary." *Id.* (citation and quotation marks omitted). Accordingly, the court concluded that "[c]onsiderations of efficient litigation cut slightly against taking depositions outside of [the forum]." *Id.* Nevertheless, the court decided that "these factors cannot defeat the presumption accorded to the deponents in this action," and ordered "that questioning should proceed in Japan." *Id.*

Here, unlike the situation in *Six West*, the relevant documents are in Japan, so this aspect of litigation efficiency weighs in RDG's favor. On the other hand, as the *Six West* court recognized, judicial supervision of depositions in Japan will be more difficult. However, the litigants in this case have managed to work out most disagreements without judicial intervention. In other words, as in *Six West*, the disputes in this case "have not been characterized by any unusual degree of acrimony." *Six West*, 203 F.R.D. at 108. Accordingly, the litigation efficiency considerations are neutral, so they cannot overcome the weight of the cost and convenience

factors, which clearly tip in RDG's favor, especially when considered in the context of this Court's presumption that depositions should be taken where the witnesses reside.

### B. Gerber Should Be Prohibited From Deposing RDG's President

"While there is 'no per se rule barring depositions of top corporate executives, . . . courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case.'" *Rodriguez v. SLM Corp.*, 2010 U.S. Dist. LEXIS 29344, at *5 (D. Conn. Mar. 26, 2010) (quoting *Cardenas v. Prudential Ins. Co. of Am.,* 2003 WL 21293757, *1 (D. Minn. May 16, 2003)). Courts are inclined to grant protective orders for high-level executives because "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Consolidated Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 9427 (PNL) (consolidated with 92 Civ. 6313 (PNL)), 1993 U.S. Dist. LEXIS 12600, at *2 (S.D.N.Y. Sept. 10, 1993).

#### 1. Gerber Cannot Meet Its Burden of Demonstrating That the President of RDG Possesses the Requisite Unique and Superior Knowledge to Justify His Deposition

"[C]ourts have agreed that if a party seeks to depose a very senior official of an adversary entity, the adversary may obtain an order vacating the deposition notice if it can demonstrate that the proposed deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts." *Rodriguez*, 2010 U.S. Dist. LEXIS 29344, at *5-6 (quoting *Malletier v. Dooney & Bourke, Inc.,* 2006 WL 3476735, at *12 (S.D.N.Y. Nov. 30, 2006); *see also Burns v. Bank of Am.*, No. 03 Civ 1685 (RMB), 2007 WL 1589437, at *3 (S.D.N.Y. Jun. 4, 2007) ("Unless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a[] deposition of a highly-placed executive' while allowing

12

other witnesses with the same knowledge to be questioned." (citations omitted)).  This is the logical result of well-recognized policy that high-level executives should be afforded increased protection for depositions since otherwise they would be obvious targets for harassment.  *See Consolidated Rail Corp., supra*.  Accordingly, when executives do not possess unique or personal knowledge about matters important to the litigation, courts have quashed their depositions.  *See Harris v. Computer Associates Int'l, Inc*., 204 F.R.D. 44, 46 (E.D.N.Y. 2001), citing *Baine v. Gen. Motors Corp*., 141 F.R.D. 332, 333-35 (M.D. Ala. 1991).

The burden is on Gerber to demonstrate that RDG's President, Mr. Tomioka, possesses some unique and superior personal knowledge relevant to the case in order to justify his deposition.  But Gerber cannot make such a showing.  Until Gerber's recent attempt to justify taking his deposition, Mr. Tomioka has never been identified during this litigation as an individual who may have knowledge relevant to the issues-at-hand.  For example, Mr. Tomioka has never been identified during a deposition or written discovery as holding any information pertinent to this case.  Likewise, given his lack of personal knowledge with respect to the relevant technology (Tomioka Decl., ¶ 4), Mr. Tomioka is unlikely to have unique or superior understanding of the accused products.

When challenged to justify Mr. Tomioka's deposition, Gerber's counsel provided the following response:

> Generally, Gerber seeks the deposition of Mr. Tomioka because the information presently available to Gerber indicates that he has been intimately involved in DG's business operations for a significant period of time.  Specifically, Mr. Tomioka joined Roland DG in 1982 and has been an officer since about 1984; he has served as President and Representative Director since March 1986; and he is a Director of Roland Corporation.
>
> Given the relatively small size of Roland DG in terms of sales, and the length of Mr. Tomioka's tenure with the company, he is in a unique position to provide an overview of the product

> development process and DG's perception of and interaction with Gerber's patent and products and the competitive environment over multiple product introductions and years, and in particular the alleged infringing products. It is highly likely that Mr. Tomioka was involved in key product development and launches including ColorCamm, Camjet, Pro II and VersaCamm.
>
> Moreover, because product development is a stated core enabler of DG as evidenced by its own publicity materials and publications, it is reasonable to expect that Mr. Tomioka was intimately involved in the product development process. As you may know, counsel for DGA questioned Gerber's witnesses about Gerber's product development process and we would like to have an opportunity to ask similar questions of DG. Indeed, DGA deposed Gerber's current and previous Presidents.
>
> Finally, Mr. Tomioka signed DG's 2010 annual report which states Gerber's claims against DG or DGA do not constitute an infringement of any patent rights, however, such litigation process may adversely affect its operating results. Mr. Tomioka therefore is a key witness who can explain why DG contends that there is no infringement of Gerber's patent rights.

Forest Decl., Ex. 6, e-mail from Anthony Difilippi to Erik Puknys (March 18, 2011).

None of these reasons holds up to scrutiny. Mr. Tomioka obviously has been "intimately involved in [R]DG's business operations for a significant period of time." That is the job of a corporation's president. But intimate involvement in business operations is not enough to justify Mr. Tomioka's deposition under this Court's case law. Instead, Gerber must show that it cannot "obtain the same information through a less intrusive means" than deposing Mr. Tomioka, or that Mr. Tomioka "has some unique knowledge pertinent to the issues in the case." *Rodriguez*, 2010 U.S. Dist. LEXIS 29344, at \*5.

Gerber speculates that Mr. Tomioka has some undefined knowledge of "the product development" and "the competitive environment over multiple product introductions and years," but in reality other executives at RDG have much greater personal knowledge about these topics. *See* Akiyama Decl., ¶¶ 3-4; Nakamura Decl., ¶ 2; Yoshizawa Decl., ¶ 2; Tomioka Decl., ¶ 5. In

14

fact, the depositions of Mr. Akiyama, Mr. Nakamura, and Mr. Yoshizawa have already been noticed by Gerber and RDG does not object to those depositions as long as they are taken in Japan. Accordingly, Mr. Tomioka's deposition is unnecessary and wholly inappropriate. *See Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (courts will often deny a request to depose a high-ranking corporate official when lower-ranking executives have access to the same information); *Harris*, 204 F.R.D. at 46 (when a high-level employee or officer can contribute nothing more than a lower-level employee, the deposition of the high-level employee is considered to be duplicative, cumulative, and burdensome, and good cause is shown not to take the deposition).

Gerber also states "that Mr. Tomioka signed DG's 2010 annual report which states Gerber's claims against DG or DGA do not constitute an infringement of any patent rights." Initially, it must be noted that Gerber's characterization is inaccurate. Mr. Tomioka did not sign the actual report, he signed a cover letter for the report, and the letter merely summarizes the current economic climate and RDG's financial performance. Forest Decl., Ex. 7, RDG 2010 Annual Report, at 1. But leaving Gerber's misstatement aside, Mr. Tomioka, like all presidents and CEOs, relied on others to collect the data and information that goes into the annual report. Tomioka Decl., ¶ 6. Moreover, contrary to Gerber's speculation, Mr. Tomioka has not studied Gerber's patent, nor was he directly involved in devising a litigation strategy (*id*. ¶ 4), which is protected by the attorney-client privilege in any event.

Also irrelevant is the fact that Mr. Tomioka is "a director of Roland Corporation." Roland Corporation makes musical instruments, and therefore has nothing to do with this case.

Finally, Gerber's statement that "DGA deposed Gerber's current and previous Presidents" deserves special attention because it suggests that Gerber's attempt to depose Mr.

Tomioka is tit-for-tat harassment. First, it must be noted that Gerber has mischaracterized the positions held by the Gerber witnesses previously deposed by DGA. DGA has *never* deposed a past or current president of Gerber. As explained at his deposition, Steven Lovass served as president of Gerber Scientific Products, a *subsidiary* of Gerber Scientific International. Forest Decl., Ex. 8, non-confidential excerpts from the deposition of Steven Lovass, November 5, 2009, at 27:19-28:10. Similarly, Greg Wolf testified that he was president of Gerber Scientific Products, not Gerber Scientific International. Forest Decl., Ex. 9, excerpts from the deposition of Greg Wolf, January 25, 2010, at 38:16-39:8. Moreover, DGA deposed those individuals because they were *personally and directly* involved in licensing negotiations for the patent-in-suit. *See* Forest Decl., Ex. 10, excerpts from the deposition of Steven Lovass, November 5, 2009, at 90:3-97:22, and Ex. 9 at 49:3-51:20. Thus, they possessed "unique knowledge pertinent to the issues in the case" that could not have been "obtain[ed] . . . through a less intrusive means." *See Rodriguez*, 2010 U.S. Dist. LEXIS 29344, at *5. The same cannot be said of Mr. Tomioka. In reality, the executives in positions most comparable to Mr. Lovass and Mr. Wolf are David Goward and Bob Curtis, respectively, the current and former presidents of DGA, the entity that actually sells the accused products in the U.S. *See* Forest Decl., Ex. 11, excerpts from the deposition of David Goward, October 14, 2009, at 21:1-6; *see* Forest Decl., Ex. 12, excerpts from the deposition of Bob Curtis, March 17, 2009, at 33:25-34:6. Gerber has already deposed both Messrs. Goward and Curtis.

### 2. Because Other Discovery Alternatives Remain, the Deposition of RDG's President Should—at the Very Least —Be Stayed Until Gerber Has Exhausted These Alternatives

Courts sometimes defer depositions of high-level executives until other avenues have been exhausted and shown to be insufficient. *Rodriguez*, 2010 U.S. Dist. LEXIS 29344, at *7-8. In *Rodriquez*, for instance, the Court found the plaintiffs had not pursued other methods of

16

discovery before noticing the deposition of defendant's high-level executives. *Id.* at 7 ("[P]laintiffs have not 'sought to question lower level corporate officials with similar knowledge before asking this Court to compel the depositions of [higher-level executives].'" (quoting *Six West*, 203 F.R.D. at 104)). Because the plaintiff had not exhausted other less burdensome discovery methods first, the Court granted the defendant's motion for a protective order to quash the deposition of the higher-level designees. *Id.* at *7-8.

As discussed above, the depositions of Mr. Akiyama (Executive Officer responsible for the development of worldwide printing technologies), Mr. Nakamura (General Manager responsible for information system development), and Mr. Yoshizawa (Sales and Marketing Manager) have been noticed by Gerber. And as stated previously, these witnesses or the lower-level employees that directly report to them have the necessary personal knowledge of these topics, making Mr. Tomioka's deposition superfluous.

It is indisputable that RDG's President is very busy. Tomioka Decl., ¶ 7. Requiring Mr. Tomioka to testify at this time would be contrary to the case law that seeks to protect such executives from burdensome and potentially harassing depositions when they possess little or no personal knowledge of the facts. The law is clear that when other discovery avenues remain untapped, the depositions of high-level executives should, at the very least, be stayed until it can be determined that the testimony of these individuals is truly necessary. *See, e.g.*, *Rodriguez*, 2010 U.S. Dist. LEXIS 29344 at *7-8 (holding that "plaintiffs may renew their request to depose higher level executives upon a showing that there is reason to believe they have 'unique factual information and institutional knowledge.'"); *Filetech, S.A. v. France Telecom, S.A.*, No. 95 Civ. 1848 (CSH), 1999 U.S. Dist. LEXIS 4693, at *4-*5 (S.D.N.Y. Feb. 16, 1999) (deferring deposition of chairman until lower-level employees were first deposed); *Consolidated Rail*

*Corp.*, 1993 U.S. Dist. LEXIS 12600, at *3 (postponing depositions of three executives until other employees were first deposed).

## IV.     CONCLUSION

RDG asks that the Court grant a protective order, because case law, fairness, and judicial economy mandate the depositions of RDG's witnesses take place in Japan, where the witnesses live and work.  Further, the Court should issue a protective order against the deposition of Mr. Tomioka, at least until Gerber can show that he has some unique and superior knowledge about matters relevant to this litigation that cannot be obtained by less intrusive means.

April 18, 2011                                         Respectfully submitted,


                                                          By:/s/ Erik R. Puknys
                                                              Erik R. Puknys (phv04301)
                                                              Jeremy S. Forest (phv04302)
                                                              Finnegan, Henderson, Farabow,
                                                                 Garrett & Dunner, LLP
                                                               3300 Hillview Avenue
                                                              Palo Alto, CA 94304
                                                              Tel:  (650) 849-6600
                                                              Fax: (650) 849-6666
                                                              Email: erik.puknys@finnegan.com

                                                              David M. Cohen (ct06047)
                                                              Daniel M. Young (ctI7188)
                                                              Federal Bar No.: ct06047
                                                              Wofsey, Rosen, Kweskin & Kuriansky, LLP
                                                              600 Summer Street
                                                              Stamford, CT 06901
                                                              Tel:  (203) 327-2300
                                                              Fax: (203) 967-9273
                                                              Email: dcohen@wrkk.com

                                                              *Attorneys for Defendant and Counterclaimant*
                                                              *Roland DG Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2011, a copy of the foregoing Roland DG Corporation's Brief in Support of its Motion for Protective Order That the Depositions of its Japanese-Resident Witnesses Take Place in Japan and to Quash the Deposition Notice of Masahiro Tomioka was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ Erik R. Puknys
    Erik R. Puknys (phv04301)
    Finnegan, Henderson, Farabow,
     Garrett & Dunner, LLP
    3300 Hillview Avenue
    Palo Alto, CA 94304
    Tel: (650) 849-6600
    Fax: (650) 849-6666
    Email: erik.puknys@finnegan.com