# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GERBER SCIENTIFIC
INTERNATIONAL, INC.,

        *Plaintiff*,

against

ROLAND DGA CORPORATION,
and ROLAND DG CORPORATION,

        *Defendants.*

_____

ROLAND DGA CORPORATION.
and ROLAND DG CORPORATION,

        *Counterclaimants*,
against

GERBER SCIENTIFIC
INTERNATIONAL, INC.,

        *Counter-Defendant.*

CIVIL ACTION NO.

3:06-CV-02024 (CFD)

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO
DEFENDANT COUNTER-CLAIMANT
ROLAND DG CORPORATION'S
MOTION FOR PROTECTIVE ORDER**

Dated: May 9, 2011

**ABELMAN, FRAYNE & SCHWAB**
666 Third Avenue
New York, New York 10017
Tel. (212) 949-9022
Fax. (212) 949-9190
jaschwab@lawabel.com
maschen@lawabel.com

**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103-1212
Tel. (860) 275-0137
Fax. (860) 881-2456
eaalquist@daypitney.com

*Attorneys for Plaintiff*
*Gerber Scientific International, Inc.*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.  PRELIMINARY STATEMENT ................................................................................. 1

II. FACTS RELEVANT TO THIS MOTION................................................................. 4

III. ARGUMENT ................................................................................................................ 8

   A.  Applicable Legal Principles. ................................................................................... 8

   B.  It Is Appropriate For Roland DG's Witnesses To Be Deposed in
       the United States. .................................................................................................... 9

       1.  Roland DG is Doing Business Here.................................................................. 9

       2.  The Procedural and Legal Impediments of Taking
          Depositions in Japan are Far More Burdensome than
          The Minor Inconvenience of Roland DG's Witnesses Traveling
          to California for Depositions ........................................................................ 11

          a.  The Procedural Impediments of Taking Depositions in
              Japan Would Be Unduly Burdensome to Gerber...................................11

          b.  The Legal Impediments of Taking Depositions in Japan
              are Unduly Prejudical to Gerber. .......................................................... 12

       3.  Safety and Practical Concerns.. .................................................................... 13

   C.  Masahiro Tomioka Is Subject to Deposition Because Only He Has
       Sufficient Knowledge of Roland DG's Relevant Activities in the 1980s ...................... 13

IV. CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

Cases                                                                                          Page

*Afram Exp. Corp. v. Metallurgiki Halyps, S.A.*,
    772 F.2d 1358 (7th Cir. 1985) ..................................................... 9

*Armsey v. Medshares Management Services, Inc.*,
    184 F.R.D. 569 (W.D.Va. 1998)................................................... 8, 9

*Buzzeo v. Bd. of Educ., Hempstead*,
    178 F.R.D. 390 (E.D.N.Y. 1998) ................................................... 8

*Chris-Craft Industrial Products, Inc. v. Kuraray Company, Ltd.*,
    184 F.R.D. 605 (N.D.Ill. 1999)..................................................... 9

*Custom Form Mfg., Inc. v. Omron Corp.*,
    196 F.R.D. 333 (N.D.Ind. 2000)........................................... 8, 9, 10, 12

*In re Anschuetz & Co.*,
    754 F.2d 602 (5th Cir. 1985) ........................................................ 12

*In re Honda American Motor Co., Inc. Dealership Relations Litigation*,
    168 F.R.D. 535 (D.Md.1996)................................................... 10, 12

*In re Outsidewall Tire Litigation*,
    267 F.R.D. 466 (E.D.Va. 2010) ..................................................... 8

*In re Vitamin Antitrust Litig.*,
    2001 WL 35814436 (D.D.C. Sept. 11, 2001) .......................... 8, 9, 10, 12

*M & C Corporation v. Erwin Behr GmbH & Co.*,
    165 F.R.D. 65 (E.D.Mich.1996) ..................................................... 10

*Morin v. Nationwide Fed. Credit Union*,
    229 F.R.D. 362 (D.Conn. 2005)..................................................... 8

*R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*,
    1992 WL 212602 (N.D.Ill.1992) ..................................................... 10

*Roberts v. Heim*,
    130 F.R.D. 430 (N.D.Cal.1990)..................................................... 10

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*,
    203 F.R.D. 98 (S.D.N.Y. 2001) ..................................................... 8

*Work v. Bier*,
106 F.R.D. 45 (D.D.C. 1985) ................................................................................. 9

*Zuchert v. Berkliff Corp.*,
96 F.R.D. 161 (N.D.Ill. 1982) ................................................................................ 9

The plaintiff/counter-defendant Gerber Scientific International, Inc. ("Gerber"), through its attorneys of record, respectfully submits this memorandum of law in opposition to the motion filed on April 18, 2011 (Doc. No. 206) by the defendant/counterclaim-plaintiff Roland DG Corporation ("Roland DG"), seeking a Protective Order directing that the depositions of its witnesses who reside in Japan take place in Japan, rather than in California where they were noticed (the "Motion"). Roland DG's motion further seeks to quash Gerber's notice to depose Masahiro Tomioka in its entirety.

## I.    PRELIMINARY STATEMENT

The facts in this case coupled with the exigencies surrounding the conditions in Japan caused by the recent earthquake and tsunami strongly support conducting the depositions in the United States. Gerber has noticed them for the most convenient venue for the witnesses and is willing to adjust scheduling consistent with this Court's scheduling order to accommodate witness schedules.

As the Court is aware from prior filings, Roland DG is a multinational corporation that sells tens of millions of dollars of the accused products in the United States through its distributor, the defendant/counterclaim-plaintiff Roland DGA Corporation ("Roland DGA"). Moreover, Roland DG is a plaintiff in this Courthouse, having asserted counter-claims seeking the invalidation of Gerber's United States patent which it need not have asserted independently given that the claims were already asserted by Roland DGA.[1] Roland DG's continued infringement of Gerber's patent including continued introduction of new infringing products

---

[1]    Indeed, it is likely that Roland DG has already twice sought relief in United States forums by causing petitions to be filed in the U.S. Patent and Trademark Office unsuccessfully seeking the invalidation of Gerber's patent.

during the pendency of this litigation has caused Gerber to lose untold millions of dollars of sales in this country.

Roland DG regularly conducts business in the United States. Its employees also travel here to attend trade shows and to visit Roland DGA facilities.[2] As recently as April 30, 2011, as touted on its website, Roland DG participated in a trade show in Las Vegas. *See* Choi Decl. Exh. 2 at "Events" section.

Roland DG nonetheless argues that it should not be obligated to produce witnesses in the U.S. that can testify concerning the facts supporting either its infringement here, or its claims against Gerber - because it is not convenient for them. Rather, Roland DG takes the position that Gerber should be required to travel to Japan to question its witnesses, knowing that the logistics to do so will prevent completion of discovery within the time set by this Court or at any time reasonably thereafter.

The tragic circumstances in Japan have already impacted the ability of Roland DG to provide discovery and the delay of this action will only be exacerbated if depositions must be conducted in Japan. As counsel for Roland DG advised Gerber's counsel on April 27, 2011, "The priv log is being prepared out of our Tokyo office. A colleague just returned from Tokyo reported that the city was still experiencing strong aftershocks and power outages."[3] *See* Choi Decl. Exh. 3 (Puknys email dated April 27, 2011). Undeniably, the March 2011 earthquake and

---

[2] *See* the finding by this Court in denying Roland DG's motion to dismiss Gerber's Second Amended Complaint dated September 20, 2010 (Doc. No. 178), attached as Exhibit 1 to the Declaration of John H. Choi in Support of Plaintiff's Opposition to Defendant Counter-Claimant Roland DG Corporation's Motion for Protective Order dated May 9, 2011 ("Choi Decl.").

[3] Early in a March 17, 2011 message, Roland DG's counsel had advised that Roland DG's document production would be delayed due to difficulties arising out of the March 11, 2011 earthquake and tsunami in Japan stating, "[i]t is my understanding that businesses in Tokyo are still experiencing power outages and other setbacks that prevent normal operation. Moreover, give the enormity of the disaster, the uncertainties concerning possible radiation leaks, exposure, and contamination, and the breakdown of power and transportation systems in and around Tokyo, it should be obvious that it will take some time for things to get back to normal there." *See* Choi Decl. Exh. 4 (Puknys email dated March 23, 2011).

tsunami in Japan has affected services and infrastructure there creating serious safety issues --
including threats from radiation, ongoing powerful aftershocks, power outages, and a shortage of
medical care and housing. Even absent the tsunami issues, requiring Gerber's counsel to depose
Roland DG's witnesses in Japan would unnecessarily delay these proceedings because of the
nature of Japanese law. In Japan, the depositions would have to be held at a U.S. Embassy or
Consulate. Currently, the earliest available date at the U.S. Embassy in Tokyo is December 6,
2011 (Choi Decl. Exh. 6 at 1) and the earliest available date at the U.S. Consulate in Osaka is
October 22, 2011 (Choi Decl. ¶9).[4] Therefore, depositions in Japan cannot be completed before
the close of the fact discovery on August 1, 2011 – or any reasonable extension thereof. As well,
taking depositions in Japan supplants this Court's ability to rule on disputes arising during the
depositions because of sovereignty issues.

Recognizing that even in the best of circumstances Japan was a problematic
venue, in an effort to accommodate travel concerns of Roland DG witnesses Gerber noticed the
depositions for Roland DGA's counsel's office in California.

Thus, the applicable law, realities of Roland DG's business activities here, and
practical concerns all warrant the denial of Roland DG's Motion as it relates to the place for
taking the depositions.

Roland DG's Motion further seeks to prevent or delay the deposition of its
President, Masahiro Tomioka. Mr. Tomioka has unique information which the other witnesses
cannot provide. Given his long history with Roland DG's printing products, he alone has
intimate knowledge of relevant information about certain key prior Roland DG developments
and its earliest alleged prior competitive product entries. Mr. Tomioka is in the unique position

---

[4]         Roland DG has previously suggested this Consulate as its preferred site.

of being able to competently testify concerning Roland DG's development of printing products in the period contemporaneous with their earliest development as well as the technical aspects of products Roland DG claims to be precursors. Roland DG has not identified any individuals who were with the company during that time or that have sufficient knowledge of the relevant facts.

Gerber therefore, respectfully requests that the Court deny Roland DG's Motion in its entirety.

## II.    FACTS RELEVANT TO THIS MOTION[5]

Gerber, headquartered in South Windsor, was started in 1946 by H. Joseph Gerber, and is a leader in providing end-to-end customer solutions to the world's sign making and specialty graphics, as well as other products. It's U.S. Patent No. 5,537,135 (the "135 Patent"), issued in 1996 and covers a method and apparatus for computerized sign making. In response to two requests filed with the Patent and Trademark Office by an anonymous third party, the '135 Patent was reexamined, and its validity was reconfirmed on May 2, 2006.

Gerber alleges that Roland DG manufactures and Roland DGA distributes computerized printing and cutting equipment that produces, among other things, durable vinyl signs, and that practice the invention of Gerber's '135 Patent. Roland DG is a self-described "leading manufacturer of an array of specialized and sophisticated computer peripherals for computer-aided design." Choi Decl. Exh. 1 at 2. It is based in Japan and incorporated under Japanese law. Roland DGA, headquartered in California, is the exclusive distributor for Roland DG in the United States and throughout North and South America (with the exception of Brazil). Roland DG manufactures the accused products in Japan. Roland DGA buys the machines from

---

[5]    Most of the facts are recited in the Court's Ruling on Motion to Dismiss dated September 20, 2010 (Choi Decl. Exh. 1), which is incorporated by reference.

Roland DG in Japan, and then imports them into the United States. DGA then advertises and sells those products to users in the United States.

Gerber's complaint in this case named Roland DGA as a defendant, but Gerber later moved to add Roland DG as a defendant. Doc. No. 128. Roland DG argued that the Court lacked personal jurisdiction over it. Doc. No. 162. The Court disagreed and granted Gerber's motion. Doc. No. 178 (Choi Decl. Exh. 1). The Court determined that personal jurisdiction is proper citing the following undisputed facts:

- Roland DG cooperated with, or possibly even directed, the introduction of Roland DG products into the American market;

- Roland DG sells its products to its American distributor, Roland DGA, which has a national network of authorized dealers for Roland DG products;

- Employees of Roland DG frequently travel to the U.S. to attend trade shows and to monitor trends in the industry and learn from Roland DGA's marketing techniques;

- Roland DG's employees come to the U.S. to train Roland DGA employees about the products they sell, and to work on products under warranty;

- Roland DG sends Roland DGA content to be included in marketing materials;

- Roland DG allows users anywhere in the U.S. to enter into a licensing agreement with the company and download software for its machines;

- Roland DG announced that a new Roland DGA facility was opening in Rhode Island to offer customers "an expanded East Coast presence";

- Roland DG's Board of Directors are required to sign off on any expenditure by Roland DGA in excess of $250,000;

- Four officers of Roland DG and one board member (Curtis) sit on Roland DGA's board; and

- Roland DG has applied for patents from the U.S. Patent and Trademark Office and has retained counsel in Washington, DC and Boston for that purpose.

Choi Decl. Exh. 1 at 3-4, 7, 10-11, 12.

Roland DG filed its Answer and Counterclaims on October 8, 2010. Doc. No. 183. The Court issued a Revised Scheduling Order setting the date for close of fact discovery for August 1, 2011. Doc. No. 203.

On February 25, 2011, Gerber served notices on Roland DG's counsel for the deposition of its employees Masahiro Tomioka, Kei Akiyama, Takayasu Nakamura and Hajime Toshizawa during the week of April 25, 2011. The depositions were noticed at Roland DGA's counsel's office in California. Choi Decl. Exh. 5.

In response, Roland DG's counsel requested that Gerber's state the reasons for these depositions. Choi Decl. Exh. 4 (Puknys email dated March 17, 2011). Gerber's counsel replied stating that: (1) Messrs. Akiyama, Nakamura and Yoshizawa were identified by Roland DG as having knowledge relevant to the case in response to Gerber's interrogatories; (2) Mr. Tomioka has been intimately involved in Roland DG's business operations since 1982; (3) for the same reasons that Gerber's current and past presidents were deposed, Mr. Tomioka is in a unique position to provide an overview of the product development process of Roland DG's infringing products; and (4) Mr. Tomioka is a key witness who can testify about Roland's affirmative defense and counterclaim of non-infringement. *Id.* (DiFilippi email dated March 18, 2011). Roland DG's counsel then advised that Roland DG would move for a protective order to prevent Mr. Tomioka's deposition and to hold the other depositions in Japan. *Id.* (Puknys email dated March 23, 2011).

On April 18, 2011, almost one month later, and one week before the depositions were scheduled to take place, Roland DG filed the instant motion. Doc. No. 206. Roland DG's motion papers include declarations from all four Roland DG employees noticed for depositions. Doc. Nos. 208-211. Generally, the employees aver that they travel to the U.S. infrequently and

that any travel to the U.S. would disrupt their busy schedules.  In addition, Mr. Tomioka states that Mr. Akiyama is "the individual that has the most knowledge" and is "the individual most familiar with the research, development, and manufacture of the products accused of infringement in this litigation."  Tomioka Decl. (Doc. No. 210) ¶¶ 5, 6.  Interestingly, Mr. Tomioka does not state what his role was with Roland DG before becoming president in 1986.

Turning first to Mr. Akiyama, he has been employed with Roland DG since 1989, was previously General Manager and is currently the Executive Officer of the Product Development Department. Akiyama Decl. (Doc. No. 208) ¶ 2.  Although Mr. Akiyama states that he has "worked directly in the development of numerous print/cut technologies, including RDG's first integrated printer/cutter, the ColorCAMM PNC 5000, which was released in 1995," he is only "generally knowledgeable about the ColorCAMM, CAMMJet, SolJet, and VersaCAMM product lines" *(id.* ¶ 3) – products whose development and operational features have been raised by Roland DG and Roland DGA as relevant to patentability and infringement, and are key issues in its defense of in this action.  The gap in Mr. Akiyama's knowledge cannot be filled by Mr. Yoshizawa who, it is suggested, may testify about Roland DG's activities in the early to mid-1980s. Yoshizawa Decl. (Doc. No. 211) ¶ 2.  However, Mr. Yoshizawa, Executive Officer in the Sales and Marketing Department, has provided no information about whether he has any technical knowledge whatsoever or whether he can provide information about the development of these earlier products.  The only witness with  factual knowledge on these issues is Mr. Tomioka.

There is therefore a need to depose Mr. Tomioka as well as witnesses identified by defendant's interrogatory answers.

As well, there were special circumstances to take these depositions in the United States before the tsunami and its consequences – and the tsunami has added additional compelling reasons for the depositions to take place in the United States.

## III. ARGUMENT

### A. Applicable Legal Principles

Gerber recognizes that under normal circumstances, the depositions of a corporation through its officers or agents occur at its principal place of business. *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D.Conn. 2005); *Buzzeo v. Bd. of Educ., Hempstead*, 178 F.R.D. 390, 392 (E.D.N.Y. 1998).

A plaintiff who seeks to depose a defendant elsewhere must demonstrate "peculiar circumstances" warranting the move to an alternate location. *Morin*, 229 F.R.D. at 363, *citing Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001). The court may consider such factors as cost, convenience and litigation efficiency in determining the site of a deposition. *In re Vitamin Antitrust Litig.*, 2001 WL 35814436, at *4-5 (D.D.C. Sept. 11, 2001); *Buzzeo*, 178 F.R.D. at 392; *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D.Ind. 2000).

The Court may also consider: (1) the location of counsel for the parties in the forum district; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes arising, which would necessitate resolution by the forum court; (4) whether the persons sought to be deposed often engage in travel for business purposes; and (5) the equities with regard to the nature of the claim and the parties' relationship. *In re Outsidewall Tire Litigation*, 267 F.R.D. 466, 470 (E.D.Va. 2010), *citing Armsey v. Medshares Management Services, Inc.*, 184 F.R.D. 569, 571 (W.D.Va. 1998); s*ee also Morin*,

229 F.R.D. at 363. In this regard, the court has broad discretion. *Custom Form*, 196 F.R.D. at 336; *Armsey*, 184 F.R.D. at 571.

The plaintiff's burden is substantially lessened, and the defendant may be deposed where trial will be held if defendant filed a permissive counterclaim. *Chris-Craft Industrial Products, Inc. v. Kuraray Company, Ltd.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999), *citing Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D.Ill. 1982). Although the counterclaims here asserted are not "permissive," nonetheless they need not have been interposed by Roland DG given that Roland DGA had already asserted the same counter-claims. Apparently, Roland DG wishes to have its own opportunity to have this forum separately consider Roland DG's position on these issues.

**B.      It Is Appropriate For Roland DG's
          Witnesses To Be Deposed in the United States**

**1.   Roland DG is Doing Business Here**

The location of Roland DG's corporate headquarters notwithstanding that the Court has found that Roland DG's U.S. directed activities are sufficient for personal jurisdiction in this Court (*see* 5 above) – and perforce subject its officers to being ordered to give depositions in the United States. "The bottom line is that a foreign corporation, subject to the *in personam* jurisdiction of this court, can be ordered under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony." *Custom Form*, 196 F.R.D. at 336, *citing Work v. Bier,* 106 F.R.D. 45, 52 (D.D.C.1985).

Indeed, Roland DG's business activities go well beyond the minimum contacts required for personal jurisdiction. These activities further justify the deposition of its employees here. *See, e.g., In re Vitamin Antitrust Litig.*, 2001 WL 35814436 at *4, *citing Afram Exp. Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1365 (7th Cir. 1985) (considering defendant's

frequent business travel to the United States). "When a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made. Under such facts, the foreign corporation's agents are frequently compelled for deposition on American soil." *Custom Form*, 196 F.R.D. at 336, *citing In re Honda American Motor Co., Inc. Dealership Relations Litigation,* 168 F.R.D. 535, 541-42 (D.Md.1996) (requiring agents of a Japanese corporate defendant to be deposed in Maryland); *see also*, *M & C Corporation v. Erwin Behr GmbH & Co.,* 165 F.R.D. 65, 68 (E.D.Mich.1996) (requiring a German corporate defendant's agents to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.,* 1992 WL 212602, *2 (N.D.Ill.1992) (requiring depositions of Dutch and Australian defendants in Chicago); *Roberts v. Heim,* 130 F.R.D. 430, 439-40 (N.D.Cal.1990) (compelling the appearance of a Swiss defendant for deposition in San Francisco).

Roland DG's arguments that travel would impose hardship on its witnesses or that its witnesses' travels are infrequent does not square with its public pronouncements. Roland DG is a multi-million dollar international company. *See* Choi Decl. Exh. 2 "Corporate Message" section. Roland DG regularly attends numerous international events including those sponsored by Roland DG. In the month of April 2011, Roland DG attended or held 15 events worldwide, including an event in Las Vegas, Nevada in late April. *See Id.* at "Events" section. As this Court has found, Roland DG's employees frequently travel to the U.S. Choi Decl. Exh. 1 at 3, 10, 12.

**2. The Procedural and Legal Impediments of Taking Depositions in Japan are Far More Burdensome than the Minor Inconvenience of Roland DG's Witnesses Traveling to California For Depositions**

As stated by the U.S. Department of State:

> Taking a deposition in Japan can be complex; depositions are controlled by detailed agreements between the United States and the Government of Japan, and procedures cannot be modified or circumvented. Order by U.S. courts cannot compel the Government of Japan to amend or overlook its judicial regulations and procedures. In addition, the Embassy cannot compel the Government of Japan to act faster, or in a way more convenient or beneficial to any party, even with a U.S. court order requesting such action.

Choi Decl. Exh. 6 at 1.

**a. The Procedural Impediments of Taking Depositions In Japan Would Be Unduly Burdensome to Gerber**

According to the U.S. Embassy's website, all depositions held by Americans in Japan must take place at the U.S. Embassy in Tokyo or at a designated U.S. Consulate. The deposing American party is required to: (1) telephone the Consulate to determine which dates and which rooms in the U.S. Embassy or Consulate are available; (2) make an initial reservation; (3) submit the initial reservation fee of $1,283; (4) apply for and receive a court order scheduling the deposition, and send the order and a list of all attorneys who will participate in the deposition; (5) submit a $309-per-day deposit for the room (the party will also have to pay $415-per hour for consular fees if the transcript is to be certified); (6) submit an additional $231 for clerical processing; (7) obtain special deposition visas from the Japanese government for the attorneys planning to attend (special visas may also be required for deposition participants other than attorneys, such as stenographers and videographers); (8) arrange for stenographers, videographers, and interpreters; and (9) arrange for the transcripts. Choi Decl. Exh. 7 at 1-2.

Roland DG's counsel has previously stated that it wished to hold the depositions in Osaka. Currently, the earliest availability at the Consulate in Osaka is October 22, 2011 (Choi

Decl. ¶9) and the earliest available date at the Tokyo Embassy is currently December 6, 2011.

Choi Decl. Exh. 6 at 1. It will certainly be impossible to conduct the depositions in Japan before

the August 1, 2011 deadline for fact discovery even assuming a reasonable extension and

realistically, it is probable that the deposition of Roland DG's witnesses, if held in Japan, would

not take place until early 2012.

###### b. The Legal Impediments of Taking Depositions In Japan are Unduly Prejudicial to Gerber

The procedural and legal impediments that Gerber faces in Japan "constitute a

substantial obstacle to the smooth conduct of proceedings," *In re Vitamin Antitrust Litig.*, 2001

WL 35814436 at *6 (citation omitted). Even absent the special circumstances created by the

tsunami the Court should therefore order the depositions to be held in California.

If the depositions were to take place in Japan, this Court's authority to control the

process and resolve any disputes at the time they may occur, if it should become necessary, is

severely compromised whether there are stipulations or not. If the venue is in the United States

this Court will retain control of the proceedings. "If a federal court compels discovery on

foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign

nationals are taken on American or neutral soil, courts have concluded that comity concerns are

not implicated." *Custom Form*, 196 F.R.D. at 336, *citing In re Honda American Motor Co., Inc.,*

168 F.R.D. at 538 (*citing In re Anschuetz & Co.,* 754 F.2d 602, 608 n. 13 (5th Cir. 1985)).

Clearly, the best way to assure an orderly discovery process in this case, and the

best way to avoid sovereignty issues that might otherwise arise, is to deny Roland DG's motion.

### 3. Safety and Practical Concerns

As the Court is aware, Japan is recovering from the disastrous earthquake and

tsunami which occurred in March 2011. The effects of the disasters are still being experienced

in Japan, including in Tokyo where Roland DG's counsel conducts some of its work for this litigation. Choi Decl. Exh. 4 (Puknys March 23 email). Indeed, Roland DG's counsel has advised as recently as April 27, 2011 that Tokyo "was still experiencing strong aftershocks and power outages," and as a consequence, discovery from Roland DG has been delayed. *Id.* Exh. 3, 4 (Puknys emails). Clearly, Japan is not the right place for the depositions at this time given the serious safety concerns.

Gerber was not unmindful of Roland DG's concern with travel. Therefore, Gerber noticed the depositions for California to accommodate Roland DG's witnesses - a place more often visited by Roland DG representatives and, to provide further comfort to the witnesses, designated the location at the offices of Roland DGA's counsel. This accommodation will substantially reduce the travel time for Roland DG's witnesses although Gerber's counsel will have to travel cross-country.

### C. Masahiro Tomioka Is Subject to Deposition Because Only He Has Sufficient Knowledge of Roland DG's Relevant Activities in the 1980s

DG argues that if not quashed totally, Mr. Tomioka's deposition should be stayed at least until Gerber has deposed Mr. Akiyama (Executive Officer responsible for the development of worldwide printing technologies), Mr. Nakamura (General Manager responsible for information system development) and Mr. Yoshizawa (Executive Officer of Sales and Marketing). Roland DG Corporation's Brief in Support of Its Motion for Protective Order that the Depositions of Its Japanese-Resident Witnesses Take Place in Japan and to Quash the Deposition Notice of Masahiro Tomioka dated April 18, 2011 (Doc. No. 206-2) ("Roland DG's Opening Br.") at 16-17. Gerber disagrees. If all deponents are not examined reasonably contemporaneously significant delays will result – and, undoubtedly, the matter of Mr. Tomioka's deposition will be the subject of additional motion practice.

Despite Roland DG's protestations that Mr. Tomioka does not possess unique and superior knowledge to justify his deposition (*Id.* at 13-16), it has not provided sufficient information for the Court to assess the issue --- whereas Gerber has. Mr. Tomioka is the only witness by nature of his position who can testify as to the decision to release new infringing products into the U.S. market notwithstanding the pendency of this litigation. Furthermore, there are certain key issues where Mr. Tomioka seems to be the <u>only</u> witness who has requisite knowledge.

Without discussing what his role with the company was prior to holding his current position of President, Mr. Tomioka states that it is his opinion that Mr. Akiyama is "the individual that has the most knowledge about" and is "the individual most familiar with the research, development, and manufacture of the products accused of infringement in this litigation." Tomioka Decl. (Doc. No. 210) ¶¶ 5, 6. Mr. Tomioka says nothing about his knowledge of what Roland DG asserts to be its earlier art devices. Interestingly, as well is the absence in Mr. Akiyama's declaration, that he has the knowledge attributed to him. What Mr. Akiyama states is that he has "obtained a detailed understanding of the computer hardware and software technologies supporting RDG's print/cut products," but then goes on to say that he is only "<u>generally knowledgeable</u> about the ColorCAMM, CAMMJet, SolJet, and VersaCAMM product lines." Akiyama Decl. (Doc. No. 208) at ¶ 3 (emphasis added). Thus, even the "best witness" identified by Mr. Tomioka (other than himself) does not have knowledge of the relevant discovery sought by Gerber.

What Mr. Tomioka has advised this Court is that he has been with Roland DG since 1982, serving as an officer since 1984 and President since 1986. Tomioka Decl. (Doc. No. 210) ¶ 2. What is known from Roland DG's website is that Roland DG released certain

potentially relevant products in the early to mid-1980s. Choi Decl. Exh. 2 "Corporate Timeline" section.  Since Mr. Akiyama has been employed with Roland DG since 1989 he would not have first hand detailed knowledge of activities relating to those products. Akiyama Decl. (Doc. No. 208) ¶ 2.  On the basis of its own timeline and affidavits, it appears inescapable that the only other individuals capable of testifying about Roland DG's activities in the early to mid-1980s are Mr. Yoshizawa who has been with Roland DG since 1983 and Mr. Tomioka.  Yoshizawa Decl. (Doc. No. 211) ¶ 2.  However, Mr. Yoshizawa is an Executive Officer in the Sales and Marketing Department and does not testify whatsoever that he has any technical knowledge of any of those products---thus leaving only Mr. Tomioka in a position to testify about these earlier products which Gerber DG has alluded to in discussing its developments.

Roland DG's argument that Gerber should not be permitted to depose Mr. Tomioka because he is a "senior official" or "executive" (Roland DG's Opening Br. at 12-13) is also meritless.  Based upon titles it appears that Messrs. Akiyama and Yoshizawa are also senior officials / executives.  Akiyama Decl. (Doc. No. 208) at ¶ 2; Yoshizawa Decl. (Doc. No. 211) ¶ 2.

The suggestion that Gerber's request to depose Tomioka is an attempt to harass Roland DG is equally without merit.  Roland DG's Opening Br. at 15-16.  Roland DG's statement that it did not depose an executive of Gerber Scientific International, Inc., the named plaintiff in this action, is misdirected.  Gerber Scientific International, Inc. ("GSII") – the named plaintiff is this action – is the corporate patent owner and Gerber Scientific Products ("GSP") is the operating company for GSII.  Steve Lovass and Greg Wolf, the current and former presidents of GSP, respectively, were indeed both deposed by Roland DGA.  Mr. Lovass is also senior vice

president of GSII and an officer of Gerber Scientific Inc., the parent company of GSII. *See* Choi

Decl. Exh. 8 at 28:24-29:15. Therefore, Roland DG's argument is without merit.

## IV. CONCLUSION

For the reasons set forth above, Gerber respectfully requests the Court deny

Roland DG's Motion and order that the depositions of Messrs. Tomioka, Akiyama, Nakamura

and Yoshizawa take place in California as soon as possible, and grant any further relief the Court

deems just and proper.

Dated: May 9, 2011                                **ABELMAN, FRAYNE & SCHWAB**

<div style="margin-left: 40%">

_____/s/_____
Jeffrey A. Schwab
Michael Aschen
666 Third Avenue
New York, New York 10017
Tel. (212) 949-9022
Fax. (212) 949-9190
jaschwab@lawabel.com
maschen@lawabel.com

**DAY PITNEY LLP**
Elizabeth A. Alquist (CT_15643)
242 Trumbull Street
Hartford, CT 06103-1212
Tel. (860) 275-0137
Fax. (860) 881-2456
eaalquist@daypitney.com

*Attorneys for Plaintiff/Counter-Defendant*
*Gerber Scientific International, Inc.*

</div>

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of (1) Plaintiff's Memorandum of Law in Opposition to Defendant Counterclaimant Roland DG Corporation's Motion for Protective Order; and (2) Declaration of John H. Choi in Support of Plaintiff's Opposition to Defendant Counterclaimant Roland DG Corporation's Motion for Protective Order was electronically filed on this 9th day of May, 2011. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. The parties may access this filing through the Court's CM/ECF System.

_____/s/_____