# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERBER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) 3:06-cv-02024-CFD ) |
| ROLAND DGA CORPORATION and ROLAND DG CORPORATION, | ) ) ) ) |
| Defendants. | ) ) |
| ROLAND DGA CORPORATION and ROLAND DG CORPORATION, | ) ) ) ) |
| Counterclaimants, | ) ) |
| v. | ) ) |
| GERBER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) ) |
| Counterclaim Defendant. | ) |

**ROLAND DG CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER THAT THE DEPOSITIONS OF ITS JAPANESE-RESIDENT WITNESSES TAKE PLACE IN JAPAN AND TO QUASH THE DEPOSITION NOTICE OF MASAHIRO TOMIOKA**

ORAL ARGUMENT REQUESTED

I.  **INTRODUCTION**

In its opening memorandum, Roland DG Corporation ("RDG") showed why this Court should follow its general rules concerning the location of depositions and order that the depositions of RDG's Japanese-resident witnesses occur in Japan. The factors of cost and convenience heavily favor holding the depositions in Japan, and no special or "peculiar" circumstances exist to justify forcing RDG's witnesses to travel the United States. RDG also demonstrated that its President, Mr. Tomioka, does not possess any relevant, unique or specialized knowledge to justify taking him away from his considerable responsibilities for a deposition, especially one on a different continent.

Gerber's Opposition fails to rebut either of these points. With regard to the depositions' location, the only "peculiar" circumstances Gerber alleges are either temporary (the current disruptions in Tokyo due to the earthquake and its aftermath) or the direct consequences of Gerber's lack of diligence (difficulty in scheduling deposition rooms at the United States Embassy in Tokyo or the U.S. Consulate in Osaka). Since Osaka is at least as convenient as Tokyo, the situation in Tokyo should have little impact and, in any event, Tokyo's problems in April cannot reasonably be expected to last through discovery. Further, despite Gerber's lack of diligence, and contrary to Gerber's representations, it is still possible to reserve rooms at the U.S. Consulate in Osaka before the close of discovery.

With respect to Mr. Tomioka, Gerber merely offers conclusory arguments and speculation about what he might know and what other RDG witnesses might not know. These arguments are baseless and contrary to the sworn testimony that Mr. Tomioka and Mr. Akiyama provided in their declarations. For these reasons, the Court should grant RDG's Motion.

## II. ARGUMENT

### A. Gerber Has Failed to Show "Peculiar Circumstances" That Would Justify Departing from this Court's General Rule That the Depositions of Defense Witnesses Should Occur Where They Reside

Gerber does not dispute the general rule that depositions of a corporation through its officers or agents occur at its principal place of business. Opp. at 8.[1] Nor does Gerber dispute that "peculiar circumstances" must exist in order for a plaintiff to depose a corporate defendant elsewhere. *Id.* In its opening memorandum, RDG established that the factors of cost and convenience heavily favor holding the depositions of RDG's witnesses in Japan, so the general rule should apply. Motion at 7-12. Gerber's Opposition fails to demonstrate otherwise.

#### 1. Gerber fails to show that cost considerations weigh in its favor.

As discussed in RDG's opening memorandum, travelling to the United States would impose a substantial hardship on RDG's witnesses. Motion at 9. Additionally, it would be much more expensive for three (or four if Mr. Tomioka is included) witnesses to travel to the United States and spend as much as one week here to attend depositions, than for Gerber's counsel to travel to Japan to take the depositions. Gerber does not contest this, but instead complains of having to pay the statutory and administrative fees that are paid by any American litigant taking depositions in Japan. Opp. at 11. Since these fees are either routine or optional,[2] they can hardly qualify as the "peculiar circumstances" this Court requires a party to show before departing from its general rule. Moreover, courts are rightly unsympathetic to plaintiffs who sue foreign

---

[1] Gerber puzzlingly notes that some courts outside of this Circuit have relaxed this general rule where the defendant has raised a permissive counterclaim, but then immediately admits that "the counterclaims here asserted are not permissive." Opp. at 9.

[2] The $415.00 per hour "consular fee" for a certified transcript listed by Gerber is not a required cost for depositions in Japan. As with depositions in the U.S., a qualified court reporter will be able to certify the transcript at no additional cost.

corporations and then complain that discovery of foreign corporations is expensive. Motion at 6-7 (citing *Work v. Bier*, 107 F.R.D. 789, 793, n.4 (D.D.C. 1985) ("Plaintiffs cannot now complain if they are required to take some discovery in the Federal Republic of Germany.")).

Additionally, these fees are smaller than the attorneys fees that will be expended preparing for and conducting the depositions regardless of where they occur. These fees are also modest when compared to the costs of sending three (or four) witnesses to the United States for depositions. Further, it must be kept in mind that Gerber, the party that initiated this suit, is a multinational company with half a billion dollars in annual revenues and is seeking millions of dollars in damages in this case. It would be unjust to order RDG to subsidize this effort.

In short, Gerber has failed to demonstrate how taking the depositions of RDG's witnesses in Japan would be prohibitively costly. Instead Gerber's opposition amounts to a request of this Court simply to shift the costs of the depositions from Gerber, the plaintiff, and the party seeking discovery, to RDG. Courts routinely deny such unreasonable requests. *See* Motion at 6-7.

### 2. Gerber's analysis of the convenience factor is legally flawed.

RDG's opening memorandum and the declarations of Mr. Akiyama, Mr. Nakamura, Mr. Yoshizawa, and Mr. Tomioka, explained that travelling to the U.S. for depositions would be highly disruptive because it would require each witness to make an unplanned and time-consuming trip to the U.S. Motion at 9-10. Gerber does not dispute this. Instead, Gerber's principal response relies on the notion that RDG's witnesses should be deposed in the U.S. because RDG is subject to the Court's jurisdiction. Opp. at 9-10. No court from this district or even this circuit has determined this to be a relevant, much less deciding, factor.

The fact that a company is subject to a U.S. court's jurisdiction *cannot* mean that its employee witnesses should be deposed in the U.S. If that were so, this Court's general rule concerning deposition location would not exist and no depositions in a U.S. litigation would ever

occur in a foreign country. That obviously is not the case. *See, e.g., Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001) (Ordering depositions of defendants' witnesses in Japan, where they resided.); *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, Case No. 97-Civ-6124 JGK, 2000 WL 1886593 *1 (S.D.N.Y. Dec. 29, 2000) (Denying plaintiff's motion to compel depositions of Japanese defendants in New York.); *Chris-Craft Indus. Prod., Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999) (Ordering depositions of defendant's Japanese witnesses in Osaka, Japan.).

Most of the cases that Gerber cites—all of them, by the way, from outside this District and Circuit—recognize that the relevant inquiry is not whether the court has jurisdiction over the defendant, but whether the noticed witnesses frequently travel to the U.S. *See M & C Corp. v. Erwin Behr GmbH & Co.,* 165 F.R.D. 65, 67-68 (E.D. Mich. 1996) (taking into consideration that "several of the officers [Erwin Behr] intends to designate frequently travel to the United States to conduct business"); *R.F. Barron Corp. v. Nuclear Fields (Australia) PTY. LTD.*, No. 91 C 7610, 1992 WL 212602 *1 (N.D. Ill. Aug. 28, 1992) (noting that the individual defendants "do not deny that they may be [in Chicago] for a convention . . . ."). In this case, all four of the noticed RDG witnesses travel infrequently to the U.S., Akiyama Decl., ¶ 6; Nakamura Decl., ¶ 4; Yoshizawa Decl., ¶ 4; and Tomioka Decl., ¶ 8., so this consideration weighs in favor of depositions in Japan. *See* Motion at 9-10; *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) (Noting that the witness "travels on business 'very infrequently'" in ordering depositions take place where the corporate defendant resides.).

As support for its argument, Gerber cites a case from the Northern District of Indiana, *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000), where the court appeared to compel a Japanese defendant to make witnesses available in Indiana or Illinois

4

principally because the court had jurisdiction over the defendant. *Id.* at 336. But the case law of this District and its sister districts from this Circuit is inconsistent with *Custom Form*. *See e.g., Sheehy v. Ridge Tool Co.*, No. 3:05-cv-01614 (CFD), 2007 U.S. Dist. LEXIS 37787, at *7 (D. Conn. May 24, 2007); *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005); *see also Devlin v. Transp. Comm. Int'l Union*, No. 95 Civ. 0742 (JFK) (consolidated with 95 Civ. 10838 (JFK)), 2000 U.S. Dist. LEXIS 264, at *8 (S.D.N.Y. Jan. 14, 2000); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001). As a result, this Court should not follow the *Custom Form* decision. Moreover, on its face, *Custom Form* is poorly reasoned (as noted *supra*, if mere jurisdiction were enough to compel a foreign deponent to travel to the U.S., the general rule to the contrary would not exist) and RDG is not aware of any other case in *any* district that has followed *Custom Form*. In fact, most federal courts, including this Court, reject *Custom Form*'s approach. *See* Motion at 6-7.

        **a)      Gerber is solely responsible for its scheduling difficulties.**

In its Opposition, Gerber argues that procedural and legal impediments make it unduly burdensome to conduct depositions in Japan and that "Japan is not the right place for the depositions at this time given the serious safety concerns." Opp. at 11-13. Gerber, however, does not point to any legitimate impediment that would make depositions in Japan particularly burdensome and its claims of "safety concerns" are greatly exaggerated.

First, Gerber says it will be a burden to "arrange for stenographers, videographers, and interpreters," and "arrange for the transcripts." Opp. at 11. But those steps would have to be taken for any deposition, regardless of location. Again, these routine arrangements cannot reasonably be called "peculiar" circumstances and Gerber's reliance on them only serves to highlight the weakness of its position on this issue.

Additionally, while it may be true that on April 27 and May 5, when Gerber's counsel checked availability, the U.S. Embassy in Tokyo and U.S. Consulate in Osaka did not have rooms available for depositions until October 2011, *see* Choi Decl. filed in support of Gerber's Opposition ("Choi Decl.") at ¶¶ 7 and 9 and Exhibit 6, the availability of rooms for depositions can change on a daily basis because, for instance, cases settle and reserved rooms get released. Matsumura Decl. ¶ 4. In fact, counsel for RDG contacted the U.S. Consulate in Osaka on May 17, 2011, and confirmed that a room *is* available for a full two-week period between June 1-15, 2011. Matsumura Decl. ¶ 3. Gerber should be able to reserve a room before discovery closes, but it has to make a diligent effort do so.

Even if the room situation were as dire as Gerber suggests, RDG's witnesses should not be penalized for Gerber's lack of diligence. Gerber has known about RDG's involvement in making the accused products since before it first filed this lawsuit against Roland DGA in 2006. *See* Ma Decl., Ex. A (Complaint) at 2. Yet, Gerber has waited nearly five-and-half years to notice these depositions. Further, as early as October 15, 2010, Gerber's counsel was aware that RDG would oppose any effort to force its Japanese witnesses to attend depositions in the United States. Ma Decl. Ex. B (Oct. 15, 2010 Letter to Court) ("Gerber has indicated that it understands RDG's position that its witnesses must be deposed in Japan, and indeed has asked RDG to provide dates on which they will be available . . . ."). Indeed, RDG's counsel urged Gerber to reserve rooms nearly six months ago because availability can be an issue. Ma Decl. Ex. C (Nov. 30 e-mail from Puknys to Difilippi) ("[M]y colleague in Tokyo checked with the US consulate in Osaka, and it has much greater availability than the Embassy in Tokyo. Have you dates to propose?"). There is simply no excuse for Gerber to wait this long to check room availability. *See* Choi Decl. ¶¶ 7 and 9; Choi Decl. Exhibit 6.

With respect to the Court's ability to resolve any disputes that might arise at the depositions, RDG has already acknowledged that the time difference will make it more difficult for the parties to contact the Court while a deposition is in progress. Motion at 11. But, as RDG also noted, discovery in this case has not been particularly adversarial. In fact, discovery in this case has been ongoing for more than five years and there has not been a single instance where the parties interrupted a deposition in progress because they needed the Court to intervene. There is no reason to believe that any serious disputes will arise during the depositions of RDG's witnesses. Even if such disputes do arise, the deposition can continue on other subjects and counsel can arrange a call with the Court before the next day's deposition begins.

Finally, Gerber exaggerates concerns regarding safety and the availability of services in Tokyo. Opp. at 12-13. While it is true that March and April have been difficult months in Tokyo, there is no reason to believe that the difficulties will continue for much longer. Indeed, the fact that depositions are occurring at the U.S. Embassy and Consulate in Japan even today (Opp. at 11-12) shows that others do not share Gerber's concerns about the current situation in Tokyo.

### 3. If Gerber cannot secure a room at the U.S. Embassy or Consulate in Japan, RDG will agree to produce its witnesses in Taipei, Taiwan.

As discussed above, Gerber could have, and should have, inquired into the availability of rooms at the U.S. Embassy in Tokyo or U.S. Consulate in Osaka years, or at least months, earlier than the week before filing its Opposition. Moreover, Gerber could still probably reserve rooms at the U.S. Consulate in Osaka if it decides to try.

Nevertheless, it is not RDG's intention to avoid depositions, but only to avoid having its witnesses forced to travel halfway around the world to attend depositions in the U.S. Accordingly, to the extent that Gerber is not able to reserve a room at the Embassy or Consulate before the close of discovery after making a diligent effort to do so, RDG would be agreeable to

producing its witnesses in Taipei, Taiwan, on a mutually agreeable date, provided that Gerber agrees to reimburse RDG for the witnesses' travel expenses. Unlike in Japan, there is no prohibition against foreign attorneys taking depositions of willing witnesses in Taiwan. *See* Ma Decl. Ex. D, (http://acs.ait.org.tw/lawyers.html) (American Institute in Taiwan's website stating that parties may choose to "take depositions at an alternate location such as a hotel business conference room, lobby, or private room."). Moreover, RDG's counsel, Finnegan, has an office in Taipei and will agree, pending availability, to make a conference room available to Gerber for the depositions. Although RDG's witnesses would still be inconvenienced by travelling to Taiwan, going there will be much less burdensome compared to the U.S. A flight from Osaka to Taipei takes only about two hours, Ma Decl. Ex. E (http://www.travelmath.com/flight-time/from/KIX/to/TPE), and there is only a one hour time difference between Japan and Taiwan.

### B. Gerber Has Not Demonstrated That RDG's President, Mr. Tomioka, Has Unique and Specialized Knowledge to Justify His Deposition

RDG's Motion and supporting declarations established that Mr. Tomioka should not be deposed because he is a senior executive who does not have unique or specialized knowledge relevant to this case. Motion at 12-18. In its Opposition, Gerber misrepresents RDG's argument by contending that RDG seeks to prevent Mr. Tomioka's deposition merely because he is a "senior official" or "executive" of RDG. Opp. at 15. Gerber thus argues that RDG is being inconsistent because it agrees that depositions of other "senior officials/executives" at RDG (Messrs. Akiyama and Yoshizawa) and at Gerber (Messrs. Lovass and Wolf) are appropriate. But in erecting this straw-man, Gerber ignores the key distinction between Mr. Tomioka and these other high level executives, all of whom have "unique or superior knowledge" relevant to this lawsuit. *See* Motion at 12-15 (distinguishing between Mr. Tomioka and the other three RDG

executives); *id.* at 16 (noting that Messrs. Lovass and Wolf were personally involved in licensing the patent-in-suit).[3]

Gerber also argues that "Mr. Tomioka is the only witness by nature of his position who can testify as to the decision to release new infringing products . . . ." Opp. at 14. Gerber does not, however, cite any supporting evidence. In fact, Gerber's statement is contradicted by the only evidence provided by either party—Mr. Tomioka's declaration stating that he does not have "any unique or superior knowledge regarding the research, development and launch of the products accused of infringement in this case," and that in his opinion, "the individual that has the most knowledge about those products is Mr. Kei Akiyama." Tomioka Decl. ¶ 4.

Gerber's attempt to twist Mr. Akiyama's statement that he is "generally knowledgeable" about certain accused products into an admission that he is less knowledgeable than Mr. Tomioka is nonsensical. Mr. Akiyama's statement that he is "generally knowledgeable" about those products is simply a recognition that no single person can know *everything* there is to know about them. Further, in response to an interrogatory, RDG informed Gerber that two witnesses, Mr. Akiyama and Bob Curtis, are most knowledgeable about RDG's "computer hardware and software for the 'print/cut' production of signs and other durable graphics." *See* Ma Decl., Exh. F (Interrogatory answers) at 3-4. Gerber fails to cast any doubt on that answer's veracity.

Gerber also fails to provide any support for its speculation that Mr. Tomioka has unique knowledge of "*potentially* relevant products in the early to mid-1980s." Opp. at 15 (emphasis

---

[3] Gerber also incorrectly states that RDG contended that "it did not depose an executive of Gerber Scientific International." Opp. at 15. That is not what RDG said. Instead, RDG said that Roland DGA has never deposed *a past or current president* of Gerber Scientific International, only past and current presidents of its subsidiary, Gerber Scientific Products. Motion at 16. Gerber concedes the accuracy of RDG's statement. Opp. at 15 ("Steve Lovass and Greg Wolf, the current and former presidents of GSP, respectively, were indeed both deposed by Roland DGA.").

added). Initially, it must be noted that Gerber has had more than five years to seek discovery and determine whether any RDG products from the 1980's are in-fact relevant to this case, but still it speculates about what might be *potentially* relevant. Gerber also complains that "Roland DG has not identified any individuals who were with the company during that time or that have sufficient knowledge of the relevant facts." Opp. at 4. But anything sold or used before 1993 is prior art to the '135 patent, so Mr. Akiyama, who has been with RDG since 1989, is certainly capable of testifying about RDG's prior-art products. RDG has also identified Mr. Bob Curtis as someone who is knowledgeable about RDG's print/cut products, including prior-art products, and Mr. Curtis has been involved with RDG products since at least 1987. *See* Ma Decl., Exh. F (Interrogatory answers) at 3-4 and 18; Ex. G (Curtis Deposition) at 13:3-14:22. Gerber's Opposition does not even mention Mr. Curtis, let alone attempt to show that Mr. Tomioka has knowledge that is superior to Mr. Curtis' or Mr. Akiyama's. Moreover, to the extent there is some gap in the knowledge of Mr. Curtis and Mr. Akiyama, the logical thing for Gerber to do is to serve a 30(b)(6) deposition notice on the topic, not to depose Mr. Tomioka, who has already testified that he is "not intimately familiar with the technological details of the print/cut products that Gerber accuses of infringement in this litigation." Tomioka Decl. ¶ 4.

Finally, Gerber's argument that Mr. Tomioka should be deposed now to avoid "significant delays," should be dismissed out of hand given Gerber's decision to wait more than five years to notice any depositions of RDG's witnesses. *See supra* page 6.

### III. CONCLUSION

For the reasons stated herein and in RDG's opening memorandum, the Court should grant RDG's Motion for Protective Order that the depositions of its Japanese-resident witnesses take place in Japan, and to quash the deposition notice of Mr. Tomioka.

May 23, 2011               Respectfully submitted,

                        By:/s/ Erik R. Puknys
                           Erik R. Puknys (phv04301)
                           Gary C. Ma (Admitted Pro Hac Vice)
                           Finnegan, Henderson, Farabow,
                            Garrett & Dunner, LLP
                           3300 Hillview Avenue
                           Palo Alto, CA 94304
                           Tel: (650) 849-6600
                           Fax: (650) 849-6666
                           Email: erik.puknys@finnegan.com

                           David M. Cohen (ct06047)
                           Daniel M. Young (ctI7188)
                           Federal Bar No.: ct06047
                           Wofsey, Rosen, Kweskin & Kuriansky, LLP
                           600 Summer Street
                           Stamford, CT 06901
                           Tel: (203) 327-2300
                           Fax: (203) 967-9273
                           Email: dcohen@wrkk.com

                           *Attorneys for Defendant and Counterclaimant*
                           *Roland DG Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2011, a copy of the foregoing Roland DG Corporation's Reply in Support of its Motion for Protective Order That the Depositions of its Japanese-Resident Witnesses Take Place in Japan and to Quash the Deposition Notice of Masahiro Tomioka was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                By:/s/ Erik R. Puknys_____
                                                    Erik R. Puknys (phv04301)
                                                    Finnegan, Henderson, Farabow,
                                                     Garrett & Dunner, LLP
                                                    3300 Hillview Avenue
                                                    Palo Alto, CA 94304
                                                    Tel: (650) 849-6600
                                                    Fax: (650) 849-6666
                                                    Email: erik.puknys@finnegan.com