**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GERBER SCIENTIFIC INTERNATIONAL, INC., | : | |
| Plaintiff, | : | |
| | : | 3:06-cv-2024 (CFD) |
| v. | : | |
| | : | |
| ROLAND DGA CORPORATION and | : | |
| ROLAND DG CORPORATION, | : | |
| Defendants. | : | |

**RULING ON MOTION FOR RECONSIDERATION**

This case arises out of a patent dispute between plaintiff Gerber Scientific International, Inc. ("Gerber") and defendants Roland DGA Corporation and Roland DG Corporation (collectively, "Roland"). On January 14, 2011, the Court issued a Ruling on Claim Construction, ECF No. 193 [hereinafter Markman Ruling]. Roland moved for reconsideration of that ruling, and the Court ruled on that motion on May 27, 2011. Ruling on Motion for Reconsideration, ECF No. 226 [hereinafter Ruling 1]. Gerber now moves the Court to reconsider Ruling 1.

**I.      Factual Background**

In July 1996, Gerber was issued Patent No. 5,537,135 (the "Patent"), which covered a method and apparatus for computerized graphic production. The Patent was amended in May 2006 by a Ex Parte Reexamination Certificate issued by the U.S. Patent Office. The process utilized a printer to print on sheet material and a cutter to cut the sheet material and printed material within the periphery of the cut edges.

The Patent uses a computer to produce the data which helps generate a graphic product from sheet material. The data establishes a positional relationship between the actual graphic

-1-

image and the edges of that design.  The computer then transmits this positional information to

the printer, which prints the image onto the sheet material.  Simultaneously, the computer also

transmits this information to the cutting device, which cuts the design along the edges in

accordance with the positional information.

The Patent sets forth two independent claims: Claim 1 focuses on a method and Claim 16

focuses on an apparatus.  All of the terms disputed in the instant Motion for Reconsideration are

in Claim 16.

**II.      Discussion**

**A.      Legal Standard**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration

will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

The Court should not grant a motion for reconsideration where the moving party seeks merely to

re-litigate matters already addressed by the Court.  Id.

**B.      Disputed Terms in Claim 16**

*i.        "printing means"*

At the initial claims construction stage, Gerber argued that a "printing means" should be

construed as "a thermal printer, a dot matrix printer, a line printer, or their equivalent."  Roland

asked the Court to instead identify the thermal printer as the corresponding structure to the

"printing means."  See 35 U.S.C. § 112, ¶ 6.  In its Markman Ruling, the Court determined that

the specification in the Patent did not limit the corresponding structure to thermal printers.

Upon reconsideration, this Court held that, while the specification anticipated that non-thermal printers can constitute printing means, the specification did not state what those other kinds of printers could be, and therefore the corresponding structures must be limited to thermal printers.  Ruling 1 at 4-5 (citing Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1551-52 (Fed. Cir. 1997)).  The Court construed "printing means" to correspond to "thermal printers only."

Gerber now asks the Court to reconsider its most recent construction of "printing means" and to construe the term to include dot matrix and line printers; in the alternative, Gerber asks this Court to clarify this construction by deleting the word "only" and replacing it with "and their equivalents."

"A structure disclosed in the specification is only deemed to be 'corresponding structure' if the specification *clearly links or associates* that structure to the function recited in the claim." Kahn v. Gen. Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998).  The issue between the two parties appears to be the test for this clear link. Gerber argues that, to determine if this link exists, this Court may consider whether "one of skill in the art would understand the specification itself to disclose the structure."  Med. Instrumentation and Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1212 (Fed. Cir. 2003).  Cf. Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc., 248 F.3d 1303, 1313 (Fed. Cir. 2001) ("[O]ne skilled in the art would not perceive any clear link or association between these structures and the function . . . .").  Relying on an expert declaration, Gerber argues that "a person of ordinary skill in the art would understand" that a dot matrix printer and a line printer are capable of performing the function of "printing means."  Pl.'s Mem. in Supp. of Mot. for Recons. 7, ECF No. 229 [hereinafter Pl.'s Mem.].  Roland seems to argue that the understanding of Gerber's expert is not sufficient to overcome the lack of a clear link in

the language of the Patent.

Gerber made this same argument in opposing the first Motion for Reconsideration.
Defs.' Mem. in Opp. to Mot. for Recons. 14, ECF No. 198.  The Court did not explicitly reject
this argument in its Ruling on Motion to Reconsider; instead the Court relied on Fonar Corp. v.
Gen. Elec. Co. to hold that "when a specification states that other structures may be used in
addition to the disclosed structure, but does not specifically identify those structures, the claim is
limited to use of the disclosed structure."  Ruling 1 at 4.  Unlike the specification in Fonar, in
which no other structures in addition to the disclosed structure were identified in the Patent, the
specification here does identify dot-matrix and line printers.  Therefore, the question on
reconsideration is whether these two types of printers were "clearly linked" to the function agreed
upon.

The U.S. Court of Appeals for the Federal Circuit has found expert testimony and
declarations insufficient to establish the "clear link" when the plain language of the patent does
not indicate such a link.  See Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1332 (Fed. Cir.
2003) (holding that expert declarations demonstrating the understanding of one of skill in the art
"cannot be used to vary the plain language of the patent document" and refusing to identify other
structures as a corresponding structure because "the specification does not clearly associate those
structures with the claimed function").  Further, Gerber's expert, as a person skilled in the art,
merely stated that he believed that dot matrix and line printers were capable of performing the
said function.  Instead, what is required is that a person skilled in the art believes that there was a
link in the specification between the function and the structures.  Medtronic, Inc., 248 F.3d at

1315. Gerber's expert does not declare as much.[1]

Even if Gerber's expert declaration had addressed the expert's perception of a link, this is not sufficient to establish the link, particularly given the consistent use of "thermal printer" throughout the Patent, which the Court considered in Ruling 1.  Dot-matrix printers are only referred to once in the Background section of the Patent (Patent, column 2, lines 14-17).  While it is the case that line printers are referred to in Claim 17, which claims an apparatus wherein the "printing means is a line printer," both parties conceded at argument that line printers are not a separate type of printer analogous to thermal or dot-matrix printers but instead "line printer" describes another aspect of printers. Thus thermal printers and dot-matrix printers can also simultaneously be line printers, and therefore the Court's construction does not exclude line printers.  Line printers can constitute printing means so long as they are thermal line printers. See Defs.' Supplemental Claim Construction Br. 14, ECF No. 98.

Gerber also asks this Court to clarify that the claim includes those structures "and their

---

[1]        Additionally, the decisions that Gerber cites in support of its argument are distinguishable.  This case is unlike situations such as Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311.  In that case, the specification noted that the structure at hand, a one-shot circuit, could be replaced with a "pulse-width modulator circuit . . . ." 379 F.3d at 1322.  The court held that although a specific pulse-width modulator circuit was not referenced, persons of skill in the art would know that "pulse-width modulator circuit" referred to a "discrete class of circuit structures that perform known functions."  This is much narrower than the specification at hand, which simply describes "other types of printers including those with movable heads."  Other cases cited by Gerber also have a much clearer link between the structure and the function or are inapplicable for other reasons.  See Med. Instrumentation and Diagnostics Corp., 344 F.3d at 1214 (expert testimony regarding understanding of one of skill in the art *and* an explicit statement in the prosecution history *and* the inclusion of the structure in question in a figure of the patent all constituted a sufficiently clear link); Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1381 (holding that the district court should have applied a higher evidentiary standard because its finding that the patent lacked *any* corresponding structure rendered the patent invalid).

equivalents" in accordance with 35 U.S.C. § 112, ¶ 6 ("[S]uch claim shall be construed to cover

the corresponding structure, material, or acts described in the specification and equivalents

thereof."). Roland does not object to the Court's explicit clarification. Therefore, this Court

construes "printing means" to correspond to "thermal printers and their equivalents."

> ii.      "positional relationship": order bias

Gerber also asks this Court to reconsider its incorporation of an "order bias" into Claim

16's apparatus claim. Claim 16 incorporates language from Claim 1 to claim "second storage

means for storing data defining printed material and a positional relationship of the printed

material within the peripheral edges of the graphic image as machine readable data."

In the Markman Ruling, the Court held that the method claims "implicitly require and

ordering of steps," Markman Ruling at 15, but that the apparatus claims did not require

chronological ordering, that they "merely describe physical structures that comprise the

invention." Markman Ruling at 16. Upon reconsideration, the Court held that to the extent that

Claim 16 incorporated language describing the method of Claim 1 – "defining printed material

and a positional relationship of the printed material within the peripheral edges of the graphic

image" – the order bias of Claim 1 is incorporated into Claim 16.

Gerber now argues that the functional language does not describe what the storage means

*does* because the storage means cannot "perform any function other than . . . storing data." Pl.'s

Mem. at 11. However, the Court in Ruling 1 did not assume that the functional language

describes the function of the *storage means*; rather, the functional language describes the purpose

of the *data* that is stored by the storage means, namely to define printed material and a positional

relationship of the printed material within the peripheral edges of the graphic image. The Court's

construction of "positional relationship" as having an order bias then does not require the storage

means to define peripheral edges, a function it cannot perform.  The Court's construction also

does not require that data to create "peripheral-edge or printed-material data."  Pl.'s Mem. at 11.

Instead, as Roland argues, the Court's construction requires that the "data defining the peripheral

edges must be defined before the data defining the printed material," Defs.' Mem. in Opp'n 7,

ECF No. 232, which is consistent with the Court's construction of Claim 1.[2]

In its Reply Brief Gerber raises the new argument that "second storage means" be

construed to require that the accused second storage means merely *be capable* of storing data

"created pursuant to the order bias of the method claims."  Pl.'s Reply Mem. in Supp. of its Mot.

for Recons. 3-4, ECF No. 237.  However, as Roland correctly argues, a "means-plus-function"

claim limitation can only be infringed by a device that actually performs the function, not one

that is merely capable of performing that function.[3]  Typhoon Touch Tech., Inc., 2011 WL

5289603, at *2 (affirming the district court's requirement that the apparatus actually be

programmed or configured to perform the function of storing a data collection application);

Applied Med. Res. v. U.S. Surgical Corp., 448 F.3d 1324, 1333 (Fed. Cir. 2006) (holding that in

---

[2]  The Federal Circuit recently affirmed a district court's incorporation of functional
language in construing an apparatus claim.  See Typhoon Touch Tech., Inc. v. Dell, Inc., 2011
WL 5289603, at *2-3 (Fed. Cir. Nov. 4, 2011).

[3]  Contrary to Gerber's interpretation of the Federal Circuit's holding in Typhoon Touch,
this Court interprets the distinction made in that opinion to be between an apparatus that
performs the function *now* and an apparatus that can be modified to perform the function at a
later time.  Both parties seem to agree that the apparatus in Claim 16 must at least be capable of
storing data now.  Roland argues that the device must not only be capable of performing the
function now but must also actually perform the function now.  The Typhoon court rejected the
appellant's argument that it is irrelevant if the function is actually performed by the apparatus and
affirmed the district court's requirement that the function "'must' be performed." 2011 WL
5289603, at *2.

order to literally infringe, the accused device had to actually perform both of the claimed

functions in a means-plus-function claim).

Gerber does not raise any other argument concerning the Court's limited incorporation of

an order bias with regards to the functional language describing the *data* stored by the storage

means.  Therefore the Court denies reconsideration of its construction of "positional

relationship" as incorporating an order bias.

## III.    Conclusion

For the reasons set forth above, the defendants' motion for reconsideration [Dkt. # 229] is

GRANTED in part and DENIED in part.

SO ORDERED this 16th day of November 2011, at Hartford, Connecticut.


/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**